IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 3, 2009 Session

**RAYMOND BAILEY v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Shelby County
No. 02-04607      W. Mark Ward, Judge**

---

**No. W2008-01657-CCA-R3-PC   -   Filed November 10, 2009**

---

The Petitioner, Raymond Bailey, appeals from the Shelby County Criminal Court's denial of post-conviction relief from his convictions for especially aggravated kidnapping, a Class A felony, and carjacking, a Class B felony.  For the especially aggravated kidnapping conviction, he received a sentence of twenty-eight years at one hundred percent.  For the carjacking conviction, he received a sentence of twelve years at thirty-five percent.  These two sentences were to be served consecutively for an effective sentence of forty years in confinement.  In his appeal, the petitioner argues that he received ineffective assistance of counsel because (1) trial counsel failed to challenge his dual convictions as violating due process under State v. Anthony, 817 S.W.2d 299 (Tenn. 1991) and State v. Dixon, 957 S.W.2d 532 (Tenn. 1997); and (2) trial counsel failed to investigate and call William Isom to testify at trial.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

James M. Gulley and Deena L. Knopf, Memphis, Tennessee, for the Petitioner-Appellant, Raymond Bailey.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Abby V. Wallace, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

        **Facts.**  On direct appeal, this court summarized the facts in the petitioner's case:

        On October 11, 2001, at approximately 9:30 p.m., Beverly Grice dropped off her acquaintance "Mookie" Golstein at a bus stop between Camelia and Somerville on Crump in Memphis.  As Golstein stood outside the opened passenger door thanking Grice for the ride, the Appellant ran down a hill beside the car and jumped inside.  The Appellant held a gun to Grice's neck and shouted, "Bitch, drive."  The

victim drove approximately fifty to seventy-five feet before stopping her vehicle at a red light. At that point, the Appellant ordered the victim to pass her purse to him and turn on the interior lights. The victim nervously struggled to turn on the lights and eventually pulled down the passenger side sun visor, which activated a light on the visor. While the Appellant was rummaging through Grice's purse with the gun on his left leg, the victim attempted to grab the gun, and a struggle ensued. The victim then jumped out of the car and ran through Lamar Terrace Apartments to a store and called 9-1-1. Grice described the perpetrator as a five foot four inch tall black male around twenty-four years old with gold teeth.

Memphis Police Officer Felicia Ship arrived at the scene at approximately 9:50 p.m. and spoke with the victim. Grice described the perpetrator as a five foot three inches tall, twenty-one to twenty-five years old, medium complected black male, weighing 150 pounds. She advised that he was wearing a hooded jacket and blue jeans and had four gold teeth.

Several days later Grice's wrecked 1998 Oldsmobile Intrigue was recovered and impounded for fingerprinting. No prints of value were lifted from the vehicle. After regaining possession of her vehicle, a cell phone was found in the car, which she took to Sergeant Pearlman. The phone's ownership was traced to William Isom. Isom could not explain why his phone was inside Grice's car and claimed that his phone had been stolen in a robbery the week before. Subsequently, Pearlman included a picture of Isom in a photospread presented to the victim, and the victim confirmed that the carjacker's photograph was not included in the photospread.

Grice saw her assailant several weeks after the carjacking when she was picking up her goddaughter at the home of Stella Wells, the girl's grandmother. That night she attempted to contact Sergeant Joseph Pearlman, who was the officer with the Robbery Bureau of the Memphis Police Department assigned to her case, but Pearlman's office was closed. On the following Monday, Grice met with Pearlman and told him that she could arrange for her assailant to come to Wells' home again. On November 1, 2001, Sergeant Pearlman waited in his car in the housing project where Wells lived, and apprehended the Appellant as he entered Wells' home, and transported him to 201 Poplar for questioning. Pearlman took Polaroid photos of the Appellant, and the victim indicated that the Appellant was indeed her assailant by writing on the photo, "this is the guy that carjacked me."

At trial, the victim described her assailant as a black man with dark skin, trimmed facial hair along his jaw line, a low haircut, and at least four gold teeth. She testified that on November 1, 2001, he was wearing a light colored camouflage sweatshirt with a hood which he removed from his head after entering her car. She subsequently identified the Appellant in the courtroom, stating that she recognized his face and his voice although he had gained weight and no longer had gold teeth.

At trial, the Appellant relied upon the defense of alibi; however, he chose not to testify. Roderick Alexander, the Appellant's cousin, testified that he was with the Appellant at the home of Marvin Owens and Stephanie Evans from around 4:00 p.m. until at least midnight on October 11, 2001, while repairing the Appellant's Cadillac. Owens and Evans confirmed that the Appellant was present at their home during this time period.

The jury returned guilty verdicts of especially aggravated kidnapping and carjacking as indicted. Following a sentencing hearing, the trial court imposed consecutive sentences of twenty-eight years for especially aggravated kidnapping and twelve years for carjacking.

State v. Raymond Bailey, No. W2004-00512-CCA-R3-CD, 2005 WL 1215965, at *1-2 (Tenn. Crim. App., at Jackson, May 20, 2005), perm. to appeal denied (Tenn. Oct. 17, 2005).

The jury found the petitioner guilty of especially aggravated kidnapping and carjacking, and the trial court imposed an effective sentence of forty years in confinement. The petitioner filed a direct appeal, and this court affirmed the judgments of the trial court. See State v. Raymond Bailey, 2005 WL 1215965, at *1. The petitioner's application for permission to appeal was denied by the Tennessee Supreme Court on October 17, 2005, and his petition to rehear was also denied by that court on November 28, 2005. See id. The petitioner then filed a timely pro se petition for post-conviction relief. On September 25, 2006, he was appointed counsel, who filed an amended petition for post-conviction relief on the petitioner's behalf on November 5, 2007. Following two evidentiary hearings on January 23, 2008, and April 17, 2008, the post-conviction court entered an order denying relief on July 11, 2008. The petitioner filed a timely notice of appeal on July 23, 2008.

**Post-Conviction Hearings.** At the post-conviction hearing on January 23, 2008, Francis Isom and William Isom testified for the petitioner. Francis Isom testified that she had a twenty-six-year-old son named William Isom who lived with her prior to his arrest. She stated that in October of 2001 she received a telephone call from Lieutenant Ballard asking if she was the owner of a cell phone that had been found on a car seat next to someone that had been robbed. Ms. Isom said that her son, William Isom, had been primarily using the cell phone at the time. She asked her son about the cell phone, and he explained that he had recently been robbed and his cell phone was taken in the robbery. Ms. Isom stated that her son had gold teeth in his early teens in 1990, 1991, and perhaps in 1992, but he did not have gold teeth in 2001.

William Isom testified that he lived with his mother, Francis Isom, before he was incarcerated. He stated that he was the victim of a robbery on October 14, 2001, the day before his birthday. He stated that he received a telephone call regarding his cell phone, and he explained to the police that his cell phone had been stolen during the robbery on October 14, 2001. Isom said that he did not report the robbery until he spoke to the police regarding his cell phone that they recovered. He described the October 14, 2001 robbery:

A dude just jumped out on me, an short guy, a young guy, he jumped out on me with a nickel-plated pistol and he told me to take my pants off and by that time I had seen one of my home boys, I had flagged him down and he turned off in there where I was at and he ran with my cell phone and like $80.00.

Isom stated that he was with his friend, James, at the time of the robbery, but he was unable to provide James's last name, address, or telephone number. He said that the person that robbed him was the passenger in a "red Integra". Later he described the car as "a '96 or '97 Pontiac with a spoiler on the back" and was unsure whether the vehicle was an Integra or an Intrigue. He stated that he had never seen the red car before he was robbed and had not seen it since the robbery . Isom said that the person who robbed him was approximately five feet tall and eighteen years old. However, he stated that he did not see the person that robbed him the courtroom at the post-conviction hearing. He was unable to see the person driving the red car. Isom said that he could not recall whether the individual that robbed him had gold teeth. He acknowledged that he wore gold teeth when he was fifteen or sixteen years old. Isom said that he was never contacted by an attorney regarding the criminal case where his cell phone was recovered, and he never received a subpoena to testify in that case. Isom said that he talked to police the day of his birthday and gave them a statement that he was not involved in the carjacking case and that his phone had been found at the scene because it had been stolen from him.

The petitioner and trial counsel testified at the post-conviction hearing on April 17, 2008. The petitioner testified that he filed a petition for post-conviction relief against trial counsel claiming ineffective assistance of counsel. The petitioner claimed that trial counsel failed to investigate William Isom's involvement in the carjacking case:

Something that [trial counsel] never did, you know, she never did investigate. Which, we both, me and [trial counsel], we [sat] down together and we went over notes, and we had [come] to the point where . . . we figured [William] Isom had been in Beverly Grice's car. Because he [matched] the description, his mom confirmed that he had gold teeth, his phone was left in the car. I mean, everything was pointing to this individual, you know. . . .

Then we looked at [William Isom's] record, theft over thousand, theft over thousand. He's always been in a predicament where he's had something that didn't belong to him.

The petitioner stated that William Isom was not present at trial. He said that he asked trial counsel to request a continuance because Isom was not present to testify.

Trial counsel testified that she had worked in the area of criminal defense for the last fifteen years. She said that she did not challenge the dual convictions under Anthony and Dixon because she did not believe that such a challenge would be successful:

I'm not sure that factually it would have been supported to have made that argument. In particular, because there were two separate crimes that were committed here, in

-4-

that, [the petitioner] didn't just try and carjack her, but he, I believe the testimony was, basically, that he got in the car, told her to drive. Not, get out of the car, I am trying to take your car, which would substantially be carjacking, but, drive.

Ms. Grice remained in the car. The car moved, I want to say a block or two. A fairly short distance. And then she jumped out of the car on her own. I think she slammed on the brakes and jumped out and ran through some projects. And then on the other end of the projects, ran to a store and then called the police. Then, when she returned, the car was not there.

So, . . . I think factually that there were two separate crimes here. And I don't think a merger would have been substantiated.

Trial counsel also stated that she had "no recollection [of the petitioner asking] for a continuance because Mr. Isom wasn't there." She said that "[e]ven if he had [requested a continuance], it would be my opinion that Mr. Isom's testimony would not have been beneficial to [the petitioner]." She said that she "believe[d] there was a subpoena issued for Mr. Isom" and that Isom's "alibi witnesses were subpoenaed and they appeared." Trial counsel explained why she believed Isom's testimony would not have been helpful to the petitioner:

The problem with Mr. Isom's testimony is that, first of all, his phone was found in the car. But that was a couple of days later. Mr. Isom had reported his phone stolen prior to the carjacking date. And, being a cell phone, I don't know where it was when calls were being placed, or things of that nature. I don't know who may have stolen it. The problem was, it could have very easily, I think, been argued, well, [the petitioner] stole [Isom's cell phone]. I don't know.

. . . [O]nce the car was wrecked, Ms. Grice was called in to view a photo lineup which included Mr. Isom. And she excluded Mr. Isom by failing to make any identification in that photo spread. And so, one of the issues, calling Mr. Isom would have given her an opportunity to say, no, this is not – he is not the one [who kidnapped and carjacked me].

On July 11, 2008, the trial court entered an order denying the petitioner's request for post-conviction relief. It found that the petitioner failed to prove that he had received ineffective assistance of counsel.

**Ineffective Assistance of Counsel.** The petitioner contends that trial counsel was ineffective in failing to challenge his dual convictions as violating due process under State v. Anthony, 817 S.W.2d 299 (Tenn. 1991) and State v. Dixon, 957 S.W.2d 532 (Tenn. 1997), and in failing to investigate and call William Isom as a witness to testify at trial. In response, the State argues that this court should affirm the denial of post-conviction relief because the petitioner failed to prove that counsel's performance was deficient or prejudicial.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). Our supreme court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901, n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under

prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 370. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068).

**A. Failure to Argue Dual Convictions Violated Due Process.** The petitioner contends that trial counsel was ineffective in failing to argue at the sentencing hearing, in the motion for a new trial, or on appeal that his dual convictions for especially aggravated kidnapping and carjacking violated due process under State v. Anthony, 817 S.W.2d 299 (Tenn. 1991) and State v. Dixon, 957 S.W.2d 532 (Tenn. 1997). As relevant in this case, especially aggravated kidnapping is defined as false imprisonment "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" T.C.A. § 35-13-305(a)(1) (2006). The crime of false imprisonment is committed by one "who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Id. § 35-13-302(a) (2006). Carjacking is defined as "the intentional or knowing taking of a motor vehicle from the possession of another by use of: (1) [a] deadly weapon; or (2) [f]orce or intimidation." Tenn. Code Ann. § 39-13-404(a) (2006).

Regarding her failure to challenge the dual convictions, trial counsel at the post-conviction hearing testified that "there were two separate crimes here" and that she did not believe "a merger would have been substantiated." The post-conviction court found that "[trial counsel] decided as a tactical matter that arguing this issue would not be beneficial. . . . She felt that facts would not support an argument that this crime involved only one criminal episode. This decision was well within trial counsel's discretion and does not require reversal." We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689, 104 S. Ct. 2052). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2065. We conclude that trial counsel's performance was not deficient. See Vaughn, 202 S.W.3d at 116.

However, even if trial counsel's performance were deficient regarding her failure to challenge the dual convictions, we conclude that trial counsel's performance was not prejudicial. See id. In State v. Anthony, the Tennessee Supreme Court contemplated "the propriety of a kidnapping conviction where detention of the victim is merely incidental to the commission of another felony, such as robbery or rape." 817 S.W.2d at 300. The Anthony court held that the proper test is "whether the confinement, movement, or detention is essentially incidental to the accompanying felony . . . or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction." Id. at 306. In State v. Dixon, 957 S.W.2d

at 535, the Tennessee Supreme Court replaced the "essentially incidental" analysis with a new two-part test:

> We must now decide whether the movement or confinement was beyond that necessary to consummate the act of [the other offense]. Anthony, 817 S.W.2d at 306. If so, the next inquiry is whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm. Id. [at 307].

An affirmative response to the second part of the test means that "[a] separate conviction for kidnapping does not violate due process." State v. Richardson, 251 S.W.3d 438, 443 (Tenn. 2008) (citing Dixon, 957 S.W.2d at 535).

In State v. Richardson, the Tennessee Supreme Court clarified the status of the law on this issue:

> The Dixon two-part test fully replaces the Anthony "essentially incidental" analysis. As we previously have observed, the Dixon test "provides the structure necessary for applying the principles announced in Anthony." State v. Fuller, 172 S.W.3d 533, 537 (Tenn. 2005). Although we adhere to the due process principles adopted in Anthony, we now make clear that the Anthony analysis should not be used in conjunction with the Dixon two-part test. The Dixon test should be used exclusively in all future inquiries.

251 S.W.3d at 443 (internal footnotes omitted).

Here, the post-conviction court found that "any failure [by trial counsel] to argue this issue [under the Dixon case] did not prejudice Petitioner." The court conducted its own analysis pursuant to Dixon:

> Forcing the victim at gunpoint to remain in the vehicle and hand over her purse is not necessary to complete a carjacking within the meaning of the statute. Although it is true that this confinement was brief in duration, the determinative consideration is the purpose of that confinement. The purpose of the additional confinement was to keep Ms. Grice in the vehicle by use of a deadly weapon, which is an especially aggravated kidnapping within the meaning of Tenn. Code Ann. § 39-13-305. This Court therefore finds that Ms. Grice's confinement was beyond that necessary to consummate the carjacking.

> Having affirmatively answered the threshold question of the Dixon test, this Court must now determine whether the "additional confinement (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3)

created a significant danger or increased the victim's risk of harm." <u>Dixon</u>, 957 S.W.2d at 535. This Court finds that this requirement has been met.

Petitioner held a gun to Ms. Grice's neck and forced her to remain in the vehicle. She was therefore prevented from summoning help during the course of this confinement. The kidnapping also significantly increased the danger facing Ms. Grice. Petitioner robbed her of her purse at gunpoint. When Petitioner his gun in his lap, Ms. Grice attempted to take the gun from him. Any number of harmful situations could have arisen from this incident. Petitioner's gun could have accidentally gone off; Ms. Grice could have wrecked her vehicle, causing the gun to go off; or Petitioner could have shot Ms. Grice in retaliation. Clearly, Ms. Grice was in greater danger when Petitioner kidnapped her at gun point. For these reasons, the especially aggravated kidnapping conviction does not violate due process.

Because the evidence does not preponderate against the findings of fact of the post-conviction court, this court is bound by those findings. We conclude that the petitioner failed to prove by clear and convincing evidence that counsel provided ineffective assistance regarding her failure to challenge the dual convictions. Accordingly, the petitioner is not entitled to relief on this issue.

**B. <u>Failure to Investigate and Call Isom as a Witness.</u>** The petitioner also contends that trial counsel was ineffective in failing to investigate and call William Isom as a witness to testify at trial. He claims that Isom was a prime suspect in Grice's case because Isom's cell phone was found in Grice's car when it was recovered. He also asserts that Isom's appearance matched Grice's description of the perpetrator in her case. This court has concluded that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." <u>Black v. State</u>, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The presentation of the witness at the post-conviction hearing is the only way for the petitioner to establish:

(a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case,
(b) a known witness was not interviewed,
(c) the failure to discover or interview a witness inured to his prejudice, or
(d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.

<u>Id.</u>

Here, the petitioner called William Isom and trial counsel to testify at the post-conviction hearing. Isom testified that his cell phone had been stolen when he was robbed on October 14, 2001. He said that the person that robbed him was the passenger in a red Integra or Intrigue and was approximately five feet tall and eighteen years old. Mr. Isom said that he could not recall whether the individual that robbed him had gold teeth. However, he acknowledged that he had worn gold

teeth several years ago when he was fifteen or sixteen years old. He said that he was never contacted by an attorney regarding the criminal case involving Grice, and he never received a subpoena to testify in that case.

Trial counsel testified that she had "no recollection that [the petitioner] asked for a continuance because Mr. Isom wasn't there." She said that "[e]ven if he had, it would be my opinion that Mr. Isom's testimony would not have been beneficial to [the petitioner]." When asked whether she subpoenaed Isom, trial counsel said that she "believe[d] there was a subpoena issued for Mr. Isom" and that [Bailey's] "alibi witnesses were subpoenaed and they appeared." Trial counsel stated that she was afraid that Isom's testimony would lead the jury to believe that the petitioner stole Isom's cell phone, which was in Grice's car when it was found. She further stated that Grice had already failed to identify Isom in a photo lineup, and if Isom testified at trial it would give Grice the opportunity to testify that Isom was not the individual who committed the offenses against her. In the order denying post-conviction relief, the trial court found that the "[p]etitioner failed to present sufficient evidence to sustain this allegation" regarding trial counsel's failure to investigate Isom. The court also found that "[n]ot calling Mr. Isom was a reasonable and tactical decision left to trial counsel that this Court will not second guess." We conclude that trial counsel's performance was not deficient regarding her failure to investigate or call Isom. See Vaughn, 202 S.W.3d at 116.

However, even if counsel's performance were deficient for not investigating or calling Isom as a witness, we conclude that trial counsel's performance was not prejudicial to the petitioner. See id. As the State aptly notes, the petitioner failed to prove that trial counsel's failure to investigate or call Isom to testify changed the outcome of his trial, especially in light of the striking similarity between Isom's description of his robber and Grice's description of the individual who kidnapped and carjacked her. See Goad, 938 S.W.2d at 370. Isom testified at the post-convicting hearing that he was robbed by a man matching the description given by Grice three days after Grice was kidnapped and carjacked. Isom testified that the individual who robbed him was approximately five feet tall and eighteen years old , and Grice told the police that the perpetrator in her case was between five foot three or four inches tall and was twenty-one to twenty-five years old. Isom testified that the robber had a "nickel-plated pistol", and Grice stated that the perpetrator had a "silver automatic" handgun. Isom stated that the robber was a passenger in a red Integra or Intrigue, and Grice stated that her car stolen during the carjacking offense was a red Oldsmobile Intrigue. We agree with the State's argument that Isom's testimony "would only have bolstered Ms. Grice's identification of the petitioner as the perpetrator."

We also agree with the State that Isom's testimony "would not have advanced a defense theory that he, rather than the petitioner, robbed Ms. Grice." In support of this argument, the State notes that Isom testified that he did not have gold teeth in 2001 and that the petitioner failed to present any evidence showing that Isom matched Grice's description of the perpetrator.

In the order denying post-conviction relief, the court found that the petitioner had not proven that trial counsel's failure to investigate William Isom was prejudicial. The court also made a finding of fact that trial counsel's decision not to call Isom to testify "was a reasonable and tactical decision left to trial counsel that this Court will not second guess."

Because the evidence does not preponderate against the findings of fact of the post-conviction court regarding trial counsel's failure to investigate or call Isom, this court is bound by those findings. The petitioner failed to establish "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." See Goad, 938 S.W.2d at 370. We conclude that the post-conviction court properly found that the petitioner did not receive ineffective assistance of counsel.

**Conclusion.** Upon review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE