**STATE of Tennessee**

v.

**Antonio FULLER and Marcellus Betty.**

Supreme Court of Tennessee,
at Nashville.

June 7, 2005 Session.

Sept. 21, 2005.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Elizabeth T. Ryan, Assistant Attorney General, for the Appellant, State of Tennessee.

Thomas Jay Norman, Nashville, Tennessee, for the Appellee, Antonio Fuller.

Mike J. Urquhart, Nashville, Tennessee, for the Appellee, Marcellus Betty.

## OPINION

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

The defendants were convicted of numerous offenses arising from a home invasion. We granted review to determine whether the Court of Criminal Appeals erred in reversing each defendant's conviction for the especially aggravated kidnapping of one of the victims based on *State v. Anthony*, 817 S.W.2d 299 (Tenn.1991). We conclude that the convictions do not violate due process under *Anthony* and its progeny. Accordingly, we reverse the judgment of the Court of Criminal Appeals in part and reinstate the especially aggravated kidnapping convictions.

### *BACKGROUND*

During the early morning hours of December 22, 2000, the defendants, Antonio Fuller and Marcellus Betty, broke into the

Goodlettsville townhouse of George Woods, III, and Quantrissa Sherrell Woods. Mr. Woods was sleeping, and Mrs. Woods was nursing their ten-day-old son. Fuller and Betty ran into the bedroom. Betty approached Mrs. Woods' side of the bed, pointing a rifle at her and the baby. Fuller walked to the other side, aiming a shotgun at Mr. Woods. Betty demanded, "Where's the dope? Where's the money?" Mrs. Woods responded, "We don't have any drugs or money. You know, we just work. All the money we have is up on the dresser, about seventy dollars." Betty threatened to kill the couple if they did not give him drugs and money.

When Betty asked where "Little Jason" was, Mr. Woods realized that the men had broken into the wrong townhouse. Mr. Woods told them that Little Jason's cousin lived in another townhouse in the complex and drove a car similar to his. Betty demanded that Mr. Woods show them the correct townhouse. Betty took the seventy dollars from the dresser and ordered Fuller to bind the couple with duct tape. Mrs. Woods' mouth was covered, and her arms were taped behind her. Mr. Woods' arms and legs were bound, and he was forced outside the townhouse. Mr. Woods estimated that forty minutes passed from the time the men entered the townhouse until Mr. Woods left with them.

Soon thereafter, Mrs. Woods' five-year-old daughter ran into the bedroom. Because Betty had warned Mrs. Woods that he knew she had a child in the other room, Mrs. Woods told her daughter, "You have to go back to your room and lay down and not say anything, because, if they catch you in here, they're going to kill us, thinking you've called the police." Then, with her arms still bound behind her, Mrs. Woods called 911 from a phone on the nightstand. Mrs. Woods hung up before her call was answered, however, fearing that Betty or Fuller was still in the townhouse. When the 911 dispatcher called back, Mrs. Woods answered and quickly explained the situation. Mrs. Woods was able to communicate despite the duct tape still covering her mouth because she had licked her lips before the tape was applied, thus loosening it. After hanging up the phone, she got back into the bed in the same position as the men had left her.

After Mr. Woods showed Fuller and Betty where Little Jason's cousin lived, the three men returned to the Woodses' townhouse. Betty took Mr. Woods up to the bedroom and placed him in the bed with his wife, who remained bound. Betty again threatened the couple, stating, "I'll kill you if you mess my sting up." Betty repeated the threats as he went back and forth sticking the barrel of the rifle in each victim's mouth. Betty ordered the couple to face the wall, and then he fled.

Mr. and Mrs. Woods worked together to remove the duct tape from each other. When free, the couple packed a bag and gathered their children. They were running toward the door when the police arrived. Upon seeing Fuller and Betty drive out of the parking lot of the complex, an officer attempted to pull them over. Both men were apprehended after a high-speed chase.

Following a jury trial, Fuller and Betty were each convicted of aggravated burglary, aggravated robbery, especially aggravated kidnapping of Mr. Woods, especially aggravated kidnapping of Mrs. Woods, evading arrest, and reckless endangerment. The trial court sentenced Fuller, a Range II offender, to ten years for aggravated burglary, eighteen years for aggravated robbery, thirty-five years for each especially aggravated kidnapping, seven years for evading arrest, and four years for reckless endangerment. The trial court sentenced Betty, a Range I offend-

er, to six years for aggravated burglary, twelve years for aggravated robbery, twenty-five years for each especially aggravated kidnapping, four years for evading arrest, and two years for reckless endangerment. The trial court imposed partially consecutive sentences, resulting in effective sentences of fifty-six years for Fuller and forty-nine years for Betty.

The Court of Criminal Appeals reversed and dismissed each defendant's conviction for especially aggravated kidnapping of Mrs. Woods, holding that dual convictions for especially aggravated kidnapping of Mrs. Woods and aggravated robbery violated the due process principles announced in *State v. Anthony*, 817 S.W.2d 299 (Tenn.1991). The remaining convictions, including those for especially aggravated kidnapping of Mr. Woods, were affirmed. Because the sentences for the especially aggravated kidnapping convictions had been ordered to be served concurrently to each other, the Court of Criminal Appeals did not modify the effective sentences. We granted the State's application for permission to appeal.

### ANALYSIS

■■■ The issue of whether a separate kidnapping conviction violates due process is purely a question of law. *State v. Cozart*, 54 S.W.3d 242, 247 (Tenn.2001). We review questions of law de novo with no presumption of correctness afforded to the lower courts' conclusions. *See Ki v. State*, 78 S.W.3d 876, 879 (Tenn.2002).

This Court first addressed the issue of whether a defendant's due process rights have been violated when dual convictions for robbery and kidnapping result from the same criminal episode in *State v. Anthony*, 817 S.W.2d 299 (Tenn.1991). We observed that "every robbery, by definition, involves some detention against the will of the victim, if only long enough to

take goods or money from the person of the victim." *Id.* at 306. We concluded that Tennessee's kidnapping statute should be narrowly applied, therefore, "so as to make its reach fundamentally fair and to protect the due process rights of every citizen, even those charged with robbery, rape, or the like." *Id.* at 305. We announced the following rule: a separate kidnapping conviction violates due process when "the confinement, movement, or detention is essentially incidental to the accompanying felony" and not "significant enough in and of itself to warrant independent prosecution." *Id.* We suggested that one method of resolving this issue is to determine "whether the defendant's conduct 'substantially increased [the] risk of harm over and above that necessarily present in the crime of robbery itself.' " *Id.* at 306. (citation omitted).

We have since refined the *Anthony* test in *State v. Dixon*, 957 S.W.2d 532 (Tenn. 1997). In *Dixon*, the defendant was convicted of aggravated kidnapping, aggravated assault, and attempted sexual battery. Noting that *Anthony* and its progeny are not meant to provide the rapist with a free kidnapping merely because he also committed rape, we concluded that the "*Anthony* decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape or robbery." *Dixon*, 957 S.W.2d at 534–35.

■■■ We crafted a two-part test for identifying *Anthony* due process violations. First, a court must determine whether the movement or confinement used was beyond that necessary to commit the accompanying felony. *Dixon*, 957 S.W.2d at 535 (citing *Anthony*, 817 S.W.2d at 306). The focus is upon the "purpose of the removal or confinement and not the distance or duration." *Dixon*, 957 S.W.2d at 535. If

the first question is answered affirmatively, then the next inquiry is "whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." *Id.* (citing *Anthony,* 817 S.W.2d at 306).

Fuller argues that *Dixon* altered the rule adopted in *Anthony* rather than clarifying it and that the *Dixon* inquiries should be abandoned. Specifically, he contends that *Dixon* improperly changed the question from whether the restraint was "essentially incidental" to the robbery, as required in *Anthony,* to whether the restraint was "necessary" to commit the robbery. The first question in the *Dixon* analysis—whether the movement or confinement used was beyond that necessary to commit the accompanying felony—does not replace the "essentially incidental" test. The first question is a threshold determination. An affirmative answer does not end the inquiry. The second question—whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm—establishes the various methods of resolving the issue. The analysis set forth in *Dixon* therefore provides the structure necessary for applying the principles announced in *Anthony.*

Addressing the first question in the *Dixon* analysis, the Court of Criminal Appeals concluded that the confinement of Mrs. Woods was beyond that necessary to commit the robbery. We agree. The proof showed that Fuller and Betty already had taken the seventy dollars from the dresser before binding Mrs. Woods with duct tape. Their primary goal was to steal money and drugs from Little Jason. To that end, they questioned Mr. and Mrs. Woods at gunpoint for approximately forty minutes about Little Jason's whereabouts. The binding of Mrs. Woods was intended to confine her while Fuller and Betty forced Mr. Woods to show them the correct townhouse. Fuller and Betty did not bind Mrs. Woods for the sole purpose of facilitating the robbery or their escape.

Having determined that the confinement of Mrs. Woods was beyond that necessary to commit the robbery, the next inquiry is whether the confinement (1) prevented Mrs. Woods from summoning help; (2) lessened the defendants' risk of detection; or (3) created a significant danger or increased Mrs. Woods' risk of harm. The Court of Criminal Appeals concluded that the binding of Mrs. Woods did not prevent her from summoning help because she was able to call 911 and answer a return call despite the duct tape on her arms and mouth. The intermediate appellate court further concluded that the binding did not lessen the risk of detection because the police arrived in time to find Fuller and Betty leaving the parking lot. Finally, the Court of Criminal Appeals found no specific proof that the binding created a significant danger or increased Mrs. Woods' risk of harm.

The State argues that the Court of Criminal Appeals improperly converted the "lessened the risk of detection" factor into an outcome-determinative test by focusing on whether the confinement actually prevented the defendants' detection. Contrary to the holding of the Court of Criminal Appeals, the ultimate success of the confinement is not an integral part of the test. Mrs. Woods was bound with the belief that she would remain confined until Betty and Fuller returned. Her confinement was intended to further the objective of lessening the risk of detection while Fuller and Betty located the correct townhouse. Even after Mrs. Woods had sum-

**538**

moned help by communicating with the 911 dispatcher, she could not leave the bed for fear that she would jeopardize the lives of her family. When the men returned, Betty threatened to kill her and placed the barrel of a rifle in her mouth. This additional assault demonstrates that the separate act of confinement after the robbery created a significant danger to Mrs. Woods and undoubtedly increased her risk of harm.

■ We emphasize that "the determination of whether a detention or movement is incidental to another offense is highly dependent on the facts in each case." *Anthony*, 817 S.W.2d at 306. The act of tying up or binding a victim during the course of a robbery, standing alone, may not justify a separate conviction for kidnapping. *See, e.g., State v. Blouvet*, 965 S.W.2d 489, 492 (Tenn.Crim.App.1997) (defendant bound victim's feet and hands while he robbed store); *State v. Sanders*, 842 S.W.2d 257, 260 (Tenn.Crim.App.1992) (defendant bound victims' hands while he robbed restaurant). In those cases, the binding of the victims did not increase the risk of harm over and above that necessarily present in the crime of robbery itself. *See Anthony*, 817 S.W.2d at 307. In this case, however, the binding of Mrs. Woods was a confinement that was not essentially incidental to the robbery but had significance independent of it. The confinement lessened the risk of detection while Fuller and Betty accomplished their goal of locating the correct townhouse. In addition, the confinement created a significant danger to Mrs. Woods and increased her risk of harm as demonstrated by the additional assault she suffered when the men returned. Under these circumstances, the confinement of Mrs. Woods rose to a level sufficient to support dual convictions for especially aggravated kidnapping of Mrs. Woods and aggravated robbery.

### CONCLUSION

We hold that separate convictions for especially aggravated kidnapping of Mrs. Woods do not violate due process under *Anthony* and its progeny. Accordingly, we reverse the judgment of the Court of Criminal Appeals insofar as it dismissed each defendant's conviction for especially aggravated kidnapping of Mrs. Woods. The judgment of the trial court is reinstated.

It appearing that the defendants are indigent, costs of this appeal are taxed to the State of Tennessee.