# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs March 30, 2010 at Knoxville

## STATE OF TENNESSEE  v. JAMES CARLOS WARD

**Appeal from the Criminal Court for Davidson County**
**No. 2008-B-2106      J. Randall Wyatt, Jr., Judge**

**No. M2009-00417-CCA-R3-CD - Filed May 14, 2010**

The defendant, James Carlos Ward, appeals from his Davidson County Criminal Court jury convictions of two counts of especially aggravated kidnapping, *see* T.C.A. § 39-13-305, and two counts of aggravated robbery, *see id.* § 39-13-402.  The defendant received an effective sentence of 45 years to serve in the Department of Correction as a Range II offender.  On appeal, the defendant claims:

> (1) the trial court erred in denying the defendant's pretrial motion to suppress a victim's identification of the defendant;
> (2) the evidence was insufficient to support two verdicts of guilty of aggravated robbery and two verdicts of guilty of especially aggravated kidnapping;
> (3) the especially aggravated kidnapping convictions violate principles of due process;
> (4) the trial court erred on principles of double jeopardy in imposing two convictions of aggravated robbery; and
> (5) the trial court erred in finding the defendant to be a Range II offender, in imposing excessive sentences, and in consecutively aligning some of the sentences.

Following our review, we modify one conviction of aggravated robbery to aggravated assault, affirm the remainder of the convictions, and remand for resentencing.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed; Modified; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Dawn Deaner, District Public Defender; and Jeffrey A. DeVasher, Assistant Public Defender (on appeal); and Jonathan F. Wing and Rodney Caldwell, Assistant Public Defenders (at trial), for the appellant, James Carlos Ward.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Amy Eisenbeck, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The convictions resulted from a robbery at a Motel 6 on Metroplex Drive in Nashville on May 29, 2006. The robbery was perpetrated by two armed men when the victims, motel-manager Betty Greer and front-desk employee Sally Hammons, were on duty. The defendant was convicted of the aggravated robbery and the especially aggravated kidnapping of each victim.

*Suppression Hearing*

The trial court conducted a hearing upon the defendant's motion to suppress evidence of Ms. Greer's identification of the defendant. Before the suppression hearing, Ms. Hammons had died of causes unrelated to the robbery.

In the hearing, Detective Brandon Dozier of the Metropolitan Nashville Police Department testified that on May 29, 2006, he began investigating a robbery at the Motel 6 on Metroplex Drive. He went to the motel at about 6:00 p.m. and viewed a surveillance videotape of a robber leaving the motel earlier in the afternoon. He testified that the surveillance tape was recorded at the Young Men's Christian Association (YMCA) building located across the street from the motel. Upon viewing the surveillance tape, the detective recognized the defendant as the man leaving the motel. The detective testified that he based his identification of the defendant upon "a prior encounter with another incident, an unrelated incident" that occurred in January 2006. In the prior incident, the detective had interviewed the defendant at the police department for approximately 45 minutes.

Based upon this identification and the physical characteristics of the robber as provided by the victim, Detective Dozier placed a photograph of the defendant into a photographic array along with pictures of five other men with similar characteristics. The detective explained that, given the victim's description of the robber, he used computer-search parameters of height, weight, age, gender, color, facial hair, and hair length, and the computer program presented him with possibilities from which he chose the other five photographs used in the array. He testified that he reviewed the possibilities presented by

the computer to select the best five matches to the defendant. The State placed the photographic array prepared by Detective Dozier into evidence.

Detective Dozier testified that, after he prepared the photographic array, he met with Betty Greer and Sally Hammons. He testified that he showed the array to the women, neither of whom had previously seen the YMCA surveillance tape, approximately 24 to 26 hours after the robbery occurred. He testified that the women viewed the array separately. He testified that when he showed the array to Ms. Greer, she immediately selected the photograph of the defendant and stated that she was "a hundred percent sure that [the person in the photograph] was, in fact, one of the two subjects of this incident."

Detective Dozier testified that Ms. Hammons passed away sometime after she had viewed the photographic array, and the detective testified that, when shown the array, Ms. Hammons made "a very quick and accurate response . . . and selected [the defendant]."

Ms. Betty Greer testified that on May 29, 2006, she worked at the Motel 6 on Metroplex Drive in Nashville and that at approximately 4:00 p.m. on that date, two men entered the motel lobby, one of whom was the defendant. She testified that it was daylight in the lobby, that the defendant's face was clearly exposed, and that she was able to observe him at close range for approximately 15 minutes while they waited for the time-delay on the safe to expire. Later, Detective Dozier presented her with an array of photographs, and she was able to select a photograph of the defendant as one of the robbers.

Based upon the testimony of Detective Dozier and Ms. Greer, the trial court ruled that Ms. Greer would be allowed to identify the defendant as part of her testimony at trial. The State agreed that at trial it would not "elicit the fact that [Ms. Hammons] was able to pick the defendant out of a photo lineup from Detective Dozer."

*Trial*

Ms. Greer testified that in May 2006 she was the manager of the Motel 6 located at 420 Metroplex Drive in Nashville. She testified that also employed in the motel office as a front-desk clerk was Sally Hammons, who was deceased at the time of trial. In the afternoon of May 29, 2006, Ms. Greer heard a conversation between Ms. Hammons and a man in the lobby who wanted to speak with a male manager. When Ms. Greer emerged from her office to assist Ms. Hammons with the man, she saw two men, one standing at the "check-in point" and the other standing back "closer to the window." She identified the defendant as the man who stood near the window of the lobby.

Ms. Greer testified that the man at the counter pulled a gun and said, "This is

a robbery." She opened the cash drawer and told the man to "take whatever." She said he "jumped the counter" and said he wanted "what's in your safe." She testified that when she informed the man that the safe could not be opened until the expiration of a ten-minute time delay, he responded, "[O]kay." The defendant then came around behind the counter with a brown bag. Ms. Greer could see that the defendant also had a gun.

Ms. Greer testified that she could see that Ms. Hammons was "terrified." Ms. Greer testified that she also was scared.

Ms. Greer testified that the defendant took two sets of handcuffs from the brown bag and cuffed the two women's hands behind their backs. Ms. Hammons asked the defendant not to hurt her. The defendant then walked Ms. Hammons to "the back office." After the code was entered into the safe, the defendant "escorted" Ms. Greer to the back office. She noticed that Ms. Hammons was "shaking all over." Ms. Greer testified that she believed that had either of the women moved, they would have been killed. She testified that, when the ten-minute delay expired, the other man opened the safe and removed money from it as well as from the cash drawer. The men ran out the front door toward the YMCA parking lot; the defendant ran with a limp.

Ms. Greer identified the handcuffs that were used in the robbery. She testified that she was unable to get her hands free until, after the robbery, a friend used a pair of bolt cutters to sever the chain on each set of handcuffs. When the police arrived, Ms. Greer described the defendant as wearing black jeans, black tennis shoes, and a white tee shirt. She said she told the officers that he had a "short type Afro" and a beard. On the next day, she reviewed the photographic array prepared by Detective Dozier and identified the picture of the defendant "right off." She testified that she later saw the YMCA surveillance tape and that she was "[o]ne hundred percent sure" that one of the persons depicted as running from the motel was the defendant.

Ms. Greer testified that the robbers removed the videotape from the motel's surveillance camera and took it with them. She stated that the robbers took approximately $720 from the safe and the cash drawer.

Metropolitan Nashville Police Officer James Cole testified that he responded to the Motel 6 robbery on May 29, 2006. Ms. Greer and Ms. Hammons were at the motel, and both women "were visibly shaken, upset." Although the connecting chains for handcuffs on the women had been severed, the wrist bands remained, and Officer Cole "got the handcuffs off of them."

The State then presented evidence that on May 29, 2006, an officer obtained

-4-

fingerprints from the handcuffs collected from the motel, as well as from the motel's cash register and counter top. The State's fingerprint analyst testified, however, that she "couldn't say that [the fingerprints from the motel] matched the defendant." She testified that some of the prints found on the motel items were of "no value" for purposes of identification.

Detective Dozier testified similarly to his suppression hearing testimony. He reviewed his visit to the Motel 6 on May 29; his viewing of the YMCA surveillance tape; his January 2006, 45-minute conversation with the defendant; and his identification of the defendant from the YMCA tape. He presented the YMCA video to the jury. He testified about the procedures he used to prepare the photographic array and to present it to Ms. Greer. He also testified that Ms. Greer selected the defendant's photograph and indicated that she was "a hundred percent sure" that the photograph depicted one of the robbers.

The State rested its case, and the defendant chose not to offer any evidence.

*Sentencing Hearing*

In the sentencing hearing, the court reviewed the presentence report. The defendant was 37 years of age and had a criminal record that included convictions of Class E felony theft in 2007; misdemeanor theft in 2004; driving with a suspended driver's license in 1995, 2004, and 2005; aggravated burglary in 1996; criminal impersonation in 1995; Class E felony forgery in 1996; and assault in 1994. The State also introduced into evidence a certified copy of a conviction judgment of rape entered in the Davidson County Criminal Court in 1996.

Ms. Greer testified in the sentencing hearing that the May 2006 robbery was very "traumatizing," adding, "There's not a day that goes by that I don't search for peace, that I don't think I'll ever find." She commented that being "escorted back to the back where Sally Hammons was already seated" caused her to "know how death feels." She described Ms. Hammons as a "good woman" who was raising her 13-year-old grandson following his abandonment by his mother and his father's death. She testified that Ms. Hammons died of a stroke two months after the robbery.

Vidar Britton testified that he was the defendant's cousin. He described the defendant as a "highly intelligent person" with the "potential to do anything that he wants to." He also described the defendant as a mentor, "like having a big brother that I never had."

Following argument by counsel, the trial court determined that the defendant was a Range II offender, and it enhanced the defendant's sentences on the basis of his record

-5-

of prior convictions. The court initially imposed a sentence of 20 years for each of the aggravated robbery convictions and a sentence of 40 years for each of the especially aggravated kidnapping convictions. The court ordered the sentences for the aggravated robberies to be served concurrently with each other and the sentences for especially aggravated kidnapping to likewise be served concurrently with each other. The court further ordered the effective sentence for aggravated robbery to be served consecutively to the effective sentence for especially aggravated kidnapping. The court based the partially consecutive alignment upon the defendant's extensive criminal record.

Later, the trial court entered an extensive written order in which it reviewed and restated its determination that the defendant was a multiple, Range II offender, declining to "merge" pursuant to the "24-hour" rule the prior convictions of rape and aggravated burglary. In its order, the court restated its finding that the defendant's sentences should be enhanced on the basis of his record of prior convictions. The court declined to apply any mitigating factors. The court, however, revised the length of each sentence to 15 years for each aggravated robbery sentence and 30 years for each especially aggravated kidnapping sentence. The court retained the arrangement of concurrent and consecutive sentences, and the judgments entered reflect the sentence determinations as made by the trial court in its written order.

*Adjudication on Appeal*

We now turn to the issues presented by the defendant on appeal.

*1. Suppression of Identification Testimony*

In his first issue, the defendant challenges the trial court's failure to suppress the identification testimony of Ms. Greer. He claims that the photographic array prepared by Detective Dozier was "so suggestive as to violate his rights to due process of law." He points to Ms. Greer's description of one of the robbers as a man wearing a white tee shirt and to the photographic array's depicting only the defendant and one other man wearing white tee shirts among the six men depicted. He also claims that the tinting of the defendant's photograph and that of another man were different than that of the other four. Additionally, the defendant posits that Ms. Greer was distracted during the robbery by her fear and that she did not avail herself the opportunity to get a good look at the robbers. The defendant further argues that Ms. Greer's description of the robbers was general and not detailed.

When the trial court makes a finding of fact at the conclusion of a suppression hearing, the facts are accorded the weight of a jury verdict. *State v. Stephenson*, 878 S.W.2d 530, 544 (Tenn. 1994). The trial court's findings are binding upon this court unless the

evidence in the record preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *see also Stephenson*, 878 S.W.2d at 544; *State v. Goforth*, 678 S.W.2d 477, 479 (Tenn. Crim. App. 1984). Questions of credibility of witnesses, the weight and value of the evidence, and resolution of conflicts in evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence. *Odom*, 928 S.W.2d at 23. We review the defendant's claim with these standards in mind.

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). In *Simmons*, the Court observed that "improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals." *Id.* at 383. Noting that "[e]ven if the police subsequently follow the most correct photographic identification procedures . . . , there is some danger that the witness may make an incorrect identification," the Court concluded that the danger of misidentification "will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if . . . the photograph of a single such individual recurs or is in some way emphasized." *Id.* The Court also observed that "[t]he chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime." *Id.*

Following *Simmons*, the Court in *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972), established a two-part analysis to assess the validity of a pre-trial identification. First, the trial court must determine whether the identification procedure was unduly suggestive. *Id.* at 198. Next, if the trial court determines that the identification procedure was unduly suggestive, it must then consider whether, under the totality of the circumstances, the identification was nonetheless reliable. *Id.* at 198-99.

In the present case, the trial court found Detective Dozier's procedure in preparing the photographic array to be very "appropriate." We have reviewed the array as it appears in the record, and we agree that the six photographs presented are remarkably similar. The differences in tinting described by the defendant are barely noticeable nuances and in any event do not single out the defendant's photograph. Only a very small portion of the shirt worn by each man depicted in a photograph is visible, and in fairness, we cannot say that the shirt worn by the defendant in his photograph is actually white. On balance, we find nothing suggestive about the array, and in any event, Ms. Greer's identification of the defendant is supported by the facts that she was face-to-face with him for an extended period

of time, that she viewed the photographic array within a day's time, and that she expressed immediate and total certainty of her identification when she saw the array. On this record, we hold that the trial court did not err in declining to suppress her identification testimony.

## 2. Sufficiency of the Evidence

The defendant challenges the sufficiency of the evidence of all his convictions on the grounds that he was insufficiently identified as a perpetrator of the offenses, and he challenges the especially aggravated kidnapping convictions on the ground that the State failed to prove that he committed those offenses via the use of a deadly weapon.

A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict because a guilty verdict destroys the presumption of innocence and replaces it with a presumption of guilt. *See State v. Evans*, 108 S.W.3d 231, 237 (Tenn. 2003); *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court must reject a defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *See Carruthers*, 35 S.W.3d at 558; *Hall*, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Issues of the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this court will not re-weigh or re-evaluate the evidence. *See Evans*, 108 S.W.3d at 236; *Bland*, 958 S.W.2d at 659. This court may not substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. *See Evans*, 108 S.W.3d at 236-37; *Carruthers*, 35 S.W.3d at 557.

As charged in the indictment in the present case, aggravated robbery, a Class B felony, is a robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." *See* T.C.A. § 39-13-402. "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-401(a). Also, as charged in the indictment, especially aggravated kidnapping, a Class A felony, is false imprisonment "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead

-8-

the victim to reasonably believe it to be a deadly weapon." *Id.* § 39-13-305. "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." *Id.* § 39-13-302.

First, we examine the defendant's claim that the State failed to prove that he was one of the men who robbed the Motel 6. The record contains direct evidence via the testimony of Ms. Greer that the defendant was one of the robbers. Her testimony was cogent and unfaltering, and given the jury's obvious accrediting of her testimony, it alone suffices to establish the defendant's guilt of the conviction offenses. As an appellate court, we defer to the jury's determinations of credibility and to any inferences it drew from the evidence. Applying this time-honored rule of appellate review, we hold that the identification evidence was legally sufficient to convict the defendant.

Next, we review the defendant's claim that the evidence failed to establish that the kidnappings were accomplished via the use of a deadly weapon. Although the defendant concedes that Ms. Greer testified that both men who entered the Motel 6 on May 29, 2006, were armed with guns, he argues that the guns did not facilitate the escorting of the victims to the back room. Respectfully, we disagree.

The evidence established that both men who entered the motel lobby had guns. After they bound the victims' hands behind their backs with handcuffs, they "escorted" the women individually to the back room. The jury could reasonably have inferred that, in each case, the "escort" remained armed. Ms. Greer testified that both women were scared or terrified and that she believed that if she moved, they would be killed. Upon these facts, we are unwilling to say that the kidnappings were not accomplished with a deadly weapon just because, for instance, the kidnappers did not prod their victims with gun barrels. Given the inferences that may be fairly drawn from the evidence by the trier of fact, that evidence supports the findings that the kidnappings were aggravated due to the use of deadly weapons.

### 3. Due Process Challenge

The defendant next claims that the charges of especially aggravated kidnapping should have been dismissed on due process grounds because the kidnappings were "essentially incidental" to the robberies. Again, we respectfully disagree.

"The issue of whether a separate kidnapping conviction violates due process is purely a question of law" subject to purely de novo review. *State v. Fuller*, 172 S.W.3d 533, 536 (Tenn. 2005).

In *State v. Anthony*, 817 S.W.2d 299, 305 (Tenn. 1991), our supreme court for

the first time considered "the propriety of a kidnapping conviction where detention of the victim is merely incidental to the commission of another felony, such as robbery or rape." *Id.* at 300. The high court acknowledged that a period of confinement technically meeting the definition of kidnapping frequently accompanies such crimes as robbery and rape and concluded that a separate kidnapping conviction cannot be supported when "the confinement, movement, or detention is essentially incidental to the accompanying felony." *Anthony*, 817 S.W.2d at 305.

> In *State v. Dixon*, 957 S.W.2d 532 (Tenn. 1997), the supreme court observed:

> *Anthony* and its progeny, however, are not meant to provide the rapist a free kidnapping merely because he also committed rape. The *Anthony* decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape or robbery. Accordingly, any restraint in addition to that which is necessary to consummate rape or robbery may support a separate conviction for kidnapping.

Id. at 534-35. The *Dixon* court also added a second level of inquiry to the *Anthony* analysis. When a court determines that the confinement is beyond that necessary for the accompanying felony, it must next determine "whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." *Id.* at 535. Finally, the *Dixon* court emphasized that the focus of any *Anthony* inquiry should be on "the purpose of the removal or confinement and not the distance or duration." *Id.*

> In *Fuller*, the court emphasized that "'the determination of whether a detention or movement is incidental to another offense is highly dependent on the facts in each case.'" *Fuller*, 172 S.W.3d at 538 (quoting *Anthony*, 817 S.W.2d at 306). The court also ruled that the *Anthony* test is not "outcome determinative," noting that the victim in *Fuller* had been able to summon help despite being bound with duct tape.

> In *State v. Richardson*, 251 S.W.3d 438 (Tenn. 2008), the supreme court completely abandoned the "essentially incidental" analysis of *Anthony* and replaced it with the two-part test established in *Dixon*:

> The *Dixon* two-part test fully replaces the *Anthony* "essentially incidental" analysis. As we previously have observed, the *Dixon* test "provides the structure necessary for applying the principles

-10-

announced in *Anthony*." Although we adhere to the due process principles adopted in *Anthony*, we now make clear that the *Anthony* analysis should not be used in conjunction with the *Dixon* two-part test. The *Dixon* test should be used exclusively in all future inquiries.

*Id.* at 443 (citation omitted). The court emphasized,

> [N]o bright line exists for making the threshold determination in the first prong of the *Dixon* test. The inquiry is fact-driven. Distance of the victim's movement and duration or place of the victim's confinement are factors to be considered in determining if the movement or confinement was beyond that necessary to consummate the accompanying felony . . . .

*Id.*

In this court's view, *Richardson* defeats the defendant's bid to have the kidnapping charges dismissed on due process grounds. First, the robbery at issue could have been accomplished without binding the victims' hands and without removing them to a back room away from view from the lobby. The removal lessened or prevented the possibility that someone would enter the lobby and interrupt the crimes in progress. Second, the handcuffing and removal of the victims prevented them from summoning help and increased the risk of harm to the victims. Accordingly, we hold that due process principles do not prohibit the convictions of both especially aggravated kidnapping and aggravated robbery in this case.

### 4. Double Jeopardy Challenge

In his next issue, the defendant claims that principles of double jeopardy preclude the imposition of two aggravated robbery convictions. He argues that essentially only one robbery occurred because only the motel's property was stolen. On this issue, we agree with the defendant.

The state and federal constitutions protect against multiple convictions or punishments for a single offense. U.S. Const. amend. V; Tenn. Const. art. 1, § 10. Double jeopardy principles typically and essentially protect (1) against a second prosecution after an acquittal; (2) against a second prosecution after conviction; and (3) against multiple punishments for the same offense. *State v. Denton*, 938 S.W.2d 373, 378 (Tenn. 1996). In the present case, the latter interest of the defendant is at stake.

-11-

In Tennessee, theft is an element of robbery. *See* T.C.A. § 39-13-401(a) ("Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear."). The defendant argues that only one theft occurred because this court has previously determined "that the proper unit of prosecution for aggravated robbery in Tennessee is the number of thefts rather than the number of victims." *State v. Franklin*, 130 S.W.3d 789, 798 (Tenn. Crim. App. 2003) ("[T]he Defendants committed a single theft from the Amoco market, albeit from the presence of two persons, by the display of a handgun. That is, the Defendants each committed one aggravated robbery, not two."). We agree that, based upon *Franklin*, "double jeopardy principles require that the second aggravated robbery conviction against [the defendant] be reversed." *See id.*

As in *Franklin*, however, "[t]hat is not to say that the [defendant is not] guilty of two crimes." *See id.* "One who intentionally or knowingly displays a gun to another, and thereby causes the other to reasonably fear imminent bodily injury, has committed an aggravated assault." *See id.*; T.C.A. § 39-13-102(a)(1)(B). Aggravated assault is a lesser included offense of aggravated robbery. *Franklin*, 130 S.W.3d at 798. Thus, the defendant in the present case was charged with aggravated assault as a lesser included offense of aggravated robbery. *See Strader v. State*, 210 Tenn. 669, 362 S.W.2d 224, 227 (Tenn. 1962) ("[W]hen one is put on trial on a single charge of felony, he is also on trial for all its lesser included offenses, as the facts may be."). The evidence in the present case is sufficient to support a conviction against the defendant of aggravated assault against either victim. The result is that we modify the conviction of aggravated robbery in count two to a conviction of the Class C felony of aggravated assault. The case must be remanded for resentencing on the aggravated assault conviction hereby imposed.

*5. Sentencing*

In his final issue, the defendant challenges the trial court's determination that he is a multiple, Range II offender; the length of his sentences; and the order for partially consecutive alignment of the sentences.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that the trial court's determinations are correct. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Id.* "The burden of showing that the sentence is improper is upon the appellant." *Id.* In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. *Id.* If appellate review reflects that the trial court properly considered all relevant factors and if its findings of fact are adequately

supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

A review of the sentencing hearing shows that the trial court, on the record, considered the sentencing guidelines, and we will review the record with a presumption that the trial court correctly sentenced the defendant. *See Ashby*, 823 S.W.2d at 169.

First, we examine the claim of erroneous offender classification. The defendant claims that his 1996 rape and aggravated burglary convictions should be treated as a single conviction for purposes of the present offender classification.

Tennessee Code Annotated section 40-35-106, as it applies to the present case, provided:

> (a) A "multiple offender" is a defendant who has received:
>
> (1) A minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes, where applicable; or
>
> (2) One (1) Class A prior felony conviction if the defendant's conviction offense is a Class A or B felony.
>
> (b) In determining the number of prior convictions a defendant has received:
>
> (1) "Prior conviction" means a conviction for an offense occurring prior to the commission of the offense for which the defendant is being sentenced;
>
> (2) All prior felony convictions, including those occurring prior to November 1, 1989, are included;
>
> . . . .
>
> (4) Except for convictions for which the statutory elements include serious bodily injury, bodily injury, threatened

-13-

serious bodily injury, or threatened bodily injury to the victim or victims, convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions . . . .

(c) A defendant who is found by the court beyond a reasonable doubt to be a multiple offender shall receive a sentence within Range II.

(d) The finding that a defendant is or is not a multiple offender is appealable by either party.

T.C.A. § 40-35-106 (2006).[1]

The defendant's current conviction offenses are Class A and Class B felonies. The trial court placed the defendant in Range II as a multiple offender based upon his 1996 convictions of rape, a Class B felony, *see* T.C.A. § 39-13-503(b), and aggravated burglary, a Class C felony, *see id.* § 39-14-403(b). The aptness of the multiple offender classification depends upon the 1996 rape and aggravated burglary convictions' being treated as separate convictions for purposes of offender classification. The defendant maintains and the State concedes that the rape and aggravated burglary offenses both occurred on July 19, 1994.[2]

In its thorough written order setting forth its sentencing determinations, the trial court reviewed the rape indictment count and found that the defendant was charged with using force or coercion to sexually penetrate the victim. The court held that the rape offense as alleged and to which the defendant pleaded guilty included the threat of bodily injury. The trial court further reviewed the aggravated burglary count and found that the defendant was charged with entering a habitation with intent to commit rape. The court concluded that, "[b]ecause the Aggravated Burglary conviction necessitated a jury finding that the Defendant

---

[1]Effective August 17, 2009, the legislature amended Code section 40-35-106 to specifically exempt from the 24-hour rule convictions of aggravated burglary.

[2]According to the copies of the rape and aggravated burglary judgments, the aggravated burglary occurred on July 19, 1994, but the rape occurred on July 9, 1994; however, copies of the indictment for those convictions were exhibited to the sentencing hearing, and both the rape and aggravated burglary counts allege July 19, 1994, as the offense date. The State does not challenge the claim that these offenses occurred on the same date, July 19, 1994.

burglarized a residence for the purposes of committing a rape,"[3] the resulting conviction of aggravated burglary included a threat of bodily injury. Finding that both the prior convictions contained elements "threatening bodily injury," the court held that the prior offenses met "the exception to the 24-hour rule and do not merge."

The defendant does not challenge the trial court's finding that the prior rape offense included an element of threatened bodily injury; however, he argues that the prior aggravated burglary offense does not include any such element. We agree with the defendant on this issue.

As alleged in the aggravated burglary count in the 1995 indictment for the July 19, 1994 offense, the defendant stood accused of entering the habitation of the named victim with the intent to commit rape. Examining the statutory elements of aggravated burglary as we are constrained to do by Code section 40-35-106(b)(4), aggravated burglary, a crime addressed in the property offenses chapter of the criminal code, is simply a burglary of "a habitation." T.C.A. § 39-14-403(a). To sustain a conviction of aggravated robbery, the State need only prove that a defendant entered a habitation "with intent to commit a felony, theft or assault." *Id*. The statutory elements of aggravated burglary do not include a threat of bodily injury because the defendant must only intend to complete the post-break-in offense; he need not actually complete the latter. For example, again confining our analysis to the statutory elements and not the facts of any particular case, the defendant could be guilty of the burglary without the victim's being raped or even being present at the time.[4] Accordingly, the "statutory element" analysis mandated by section 40-35-106(b)(4) indicates that the aggravated burglary conviction does not equate to an exception to the 24-hour rule.

As such, the defendant should have been classified as a standard, Range I offender for purposes of the Class A and Class B felonies of which he stands convicted. He would be classified as a multiple, Range II offender for purposes of the Class C felony of aggravated assault imposed in this opinion. The case is remanded for resentencing of the defendant as a Range I offender in count one, the aggravated robbery of Ms. Greer; count three (previously count four), the especially aggravated kidnapping of Ms. Hammons; and count four (previously count five), the especially aggravated kidnapping of Ms. Greer. He may be sentenced as a Range II offender in count two (previously count three), the

---

[3]The aggravated burglary judgment exhibited to the sentencing hearing states that both the aggravated burglary and rape convictions were predicated upon guilty pleas.

[4]We also note that, according to the statutory elements of rape, a rape as alleged in the 1995 burglary indictment as the intended post-break-in felony could have been committed by other than "force or coercion." *See* T.C.A. § 39-13-503(a) (proscribing as rape actions committed via, for example, fraud and incapacitation of the victim).

-15-

aggravated assault of Ms. Hammons.

We now turn to the defendant's claim that the sentences imposed were excessively long. In making its sentencing determination in the present case, the trial court, at the conclusion of the sentencing hearing, was obliged to determine the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and sentencing hearings, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant made in his behalf about sentencing, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b); -103(5). The 2005 amendments to the Sentencing Act removed the statutory provision that permitted a defendant to contest the weight attributed to the enhancement and mitigating factors.[5] In addition, the 2005 amendment to Tennessee Code Annotated section 40-35-114 provides that the trial court "shall consider, but is not bound by" the enhancement factors, rendering them advisory in nature.

In the present case, the trial court enhanced the defendant's sentences based upon his record of prior offending. *See id.* § 40-35-114(1) (providing as an advisory factor for enhancing a sentence that "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range"). The court declined to apply any mitigating factors. On appeal, the defendant claims that the sentences imposed are "inconsistent with the purposes of sentencing set out in [Code sections] 40-35-102 and 40-35-103."

The evidence at the sentencing hearing showed that the defendant had garnered prior felony and misdemeanor convictions in addition to those necessary to establish the applicable range. As such, the use of enhancement factor (1) justified increasing the Class A felony sentences from a minimum of 25 years to 30 years each and the Class B felony sentences from a minimum of 12 years to 15 years each. Of course, these increases reflected Range II sentencing, and upon resentencing, the ranges will vary according to our preceding analysis. Suffice it to say that enhancement factor (1) justified the sentences imposed pursuant to the range hierarchy originally, though erroneously, used.

Finally, the defendant challenges the trial court's consecutive alignment of the

_____

[5]Prior to the 2005 amendment, Tennessee Code Annotated section 40-35-401 allowed an appeal on grounds that "[t]he enhancement and mitigating factors were not weighed properly, and the sentence is excessive under the sentencing considerations set out in § 40-35-103." T.C.A. § 40-35-401(b)(2) (2003). The 2005 amendment removed this provision.

effective aggravated robbery sentence with the effective especially aggravated kidnapping sentence. Through this alignment, the court crafted a net effective sentence of 45 years in the department of correction. The trial court based the consecutive alignment upon the defendant's extensive record of criminal activity. *See* T.C.A. § 40-35-115(b)(2).

Relying upon the statutory requirement that the defendant serve the 30-year sentences for especially aggravated kidnapping at 100 percent, he argues on appeal that the effective sentence imposed exceeds that deserved for the offenses committed and is not the least severe sentence necessary to achieve the purposes of sentencing. *See id.* § 40-35-103(2) ("The sentence imposed should be no greater than that deserved for the offense committed . . . ."), (4) ("The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. . . .").

We acknowledge the constraint upon our courts to impose the least severe sentence necessary to achieve the purposes of sentencing, but we must also acknowledge in the present case the prevalence of two other legal realities. First, we review the present sentencing de novo with a presumption of correctness. Second, the legislature has seen fit to provide that "[t]here shall be no release eligibility for a person committing [especially aggravated kidnapping and that such] person shall serve one hundred percent (100%) of the sentence imposed by the court less sentence credits earned and retained." *Id.* § 40-35-501(i)(1), (2)(C). All the while, the legislature has retained the provision in Code section 40-35-115(b)(2) for imposing consecutive sentences based upon the extensiveness of the defendant's criminal activity. We cannot say that the court erred in aligning some sentences consecutively, especially in light of sentencing testimony that bespoke the life-altering terror to which the victims were subjected.

*Conclusion*

The defendant's convictions are affirmed except that the conviction of aggravated robbery in count two (previously count three) is modified to aggravated assault. The sentences as imposed are vacated, and the cause is remanded for resentencing as described in this opinion.

_____
JAMES CURWOOD WITT, JR., JUDGE