# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 11, 2011

## STATE OF TENNESSEE v. RANDY LYNN SHELBY

**Appeal from the Circuit Court for Montgomery County**
**No. 40500128      John H. Gasaway, III, Judge**

---

**No.  M2006-02582-CCA-R3-CD - Filed March 8, 2011**

---

The Defendant, Randy Lynn Shelby, was convicted by a Montgomery County jury of two counts of aggravated burglary and one count of especially aggravated kidnapping. Following a sentencing hearing, he received an effective sixty-year sentence to be served at 100%.  In this direct appeal, the Defendant's only challenge is to the sufficiency of the evidence supporting his conviction for especially aggravated kidnapping, arguing that the short period of confinement was incidental to the burglary and did not substantially interfere with the victim's liberty.  After a review of the record, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the Appellant, Randy Lynn Shelby.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; John Carney, Jr., District Attorney General; and Arthur F. Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Factual Background

This case arises from the Defendant's burglary of two homes during the early morning hours of November 28, 2004. On February 7, 2005, a Montgomery County grand jury returned a seven-count indictment against the Defendant, charging him with three counts of aggravated burglary (two counts based upon alternative theories), one count of attempted aggravated rape, one count of attempted first degree murder, and two counts of especially aggravated kidnapping.

Viewed in the light most favorable to the State, the proof at trial showed that, in the early morning hours of November 28, 2004, the victim Baker ("Mr. Baker") was at his North Ford Street home, along with his wife, four children, and thirteen-year-old cousin. Mr. Baker was in his master bedroom playing on the computer, and his cousin was in the living room watching television. Sometime between 3:00 and 3:30 a.m., Mr. Baker turned his head and saw an intruder in his house (later identified as the Defendant). According to both Mr. Baker and his cousin, who also viewed the intruder, the Defendant was wearing a white shirt and blue jeans and had a red bandana over his face and a rag in his hand. Upon seeing the the Defendant, Mr. Baker jumped up and grabbed a bowie knife he kept nearby and went after the man. The Defendant "bolted" from the residence, knocking over the kitchen table on his way out the back door. Mr. Baker then shut and locked the door and called the police. After examining the house, Mr. Baker noticed some "pry marks" around the back door. He was also later informed that the phone line and cable lines to his residence had been cut. Mr. Baker confirmed that he did not give the Defendant permission to be inside his home.

The Defendant then drove to the victim Schall's ("the victim") mobile home on Gip Manning Road.[1] On that evening, the victim was alone; her husband and young child were not at home. The victim went to her bedroom around 12:30 or 1:00 a.m. that evening and began watching a movie. About thirty minutes or so later, she fell asleep. After hearing several loud noises, the victim, who was lying on her back, was awakened by a man in her room (later identified as the Defendant). According to the victim, the Defendant, who was wearing a red bandana and armed with a box-knife, jumped on top of her. She began screaming, saying "take anything you want, please don't hurt me. I have a son." The Defendant asked where her son was, but she refused to tell him.

The Defendant then placed a rag over the victim's nose and mouth, which rag she believed was soaked in ether. The victim testified that she fought with the Defendant for

---

[1] Testimony established that it was ten point six miles from Mr. Baker's residence to the victim's residence, taking approximately seventeen minutes to drive there at the posted speed limit.

approximately eight to ten minutes,[2] using her quilt to cover herself for protection. During the struggle, the victim was cut on her right thumb and chin. The Defendant then ordered the victim to turn over on her stomach. Believing she would be raped and killed, she acted like she was rolling over, but instead shoved the Defendant and fled from the residence.

After running outside, the victim hid behind her rental car, and it was about five minutes later when the Defendant emerged from inside the home. Believing it was her opportunity to escape, the victim began to run. The Defendant followed. She lost sight of the Defendant when she arrived at a neighbor's house. Jerry Mealer, the victim's neighbor, testified that, around 4:30 a.m. in the morning, he and his wife were awakened by the doorbell ringing and "pounding" on the front door. After hearing the terrified victim's cries for help, he let her come inside, and they called the police.

At trial, the victim elaborated that her attacker was Caucasian and was wearing blue jeans, a hooded sweatshirt, and tennis shoes. The victim confirmed that she did not give the Defendant permission to be inside her residence.

Upon subsequent examination of the house, the victim believed the intruder came in through the window in her son's play room—the screen was ripped and the window was open. The back door also "looked like a screw driver tried jimmying up the opening of the door[.]" Nothing was missing from the victim's residence. It was determined that the phone lines to the victim's home had been severed. Forensic paint analysis later placed the Defendant's truck near the scene of the victim's mobile home. The Defendant also gave inculpatory statements admitting his involvement in these crimes.

Only the two aggravated burglary counts and the especially aggravated kidnapping count were submitted to the jury for their consideration. Following deliberations on these three counts, the jury found the Defendant guilty as charged. See Tenn. Code Ann. §§ 39-13-305 (especially aggravated kidnapping), -14-403 (aggravated burglary). Thereafter, the trial court conducted a sentencing hearing. The Defendant, a career offender, received concurrent terms of fifteen years for each aggravated burglary conviction and sixty years for the especially aggravated kidnapping conviction, resulting in an effective sentence of sixty years at 100%.[3] He now appeals.

_____

[2] It was noted on cross-examination that, in her police statement, the victim stated the struggle lasted between ten to fifteen minutes.

[3] Under Tennessee Code Annotated section 40-35-501(i), especially aggravated kidnapping is specified as an offense requiring 100% service of the crime.

**Analysis**

On appeal, the Defendant challenges only the sufficiency of the convicting evidence supporting the offense of especially aggravated kidnapping.[4] Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

Relevant to this case, especially aggravated kidnapping "is false imprisonment . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. § 39-13-305(a)(1). "A person commits . . . false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302(a).

The Defendant challenges his conviction on two grounds: intent and substantial interference. As for his "intent," he contends that he had no intent to kidnap the victim, her confinement being only incidental to the burglary. This argument is actually a due process

_____

[4] He does not challenge his aggravated burglary convictions.

-4-

argument. See State v. Anthony, 817 S.W.2d 299 (Tenn. 1991). He also argues that the short period of time during which the victim was confined did not amount to substantial interference with her liberty.

Whether a separate kidnapping conviction violates principles of due process is a question of law determined initially by the trial court. State v. Fuller, 172 S.W.3d 533, 535 (Tenn. 2005) (citing State v. Cozart, 54 S.W.3d 242, 247 (Tenn. 2001)). Appellate review of the trial court's determination is de novo with no presumption of correctness. Griffin v. State, 182 S.W.3d 795, 798 (Tenn. 2006).

Due process principles are violated when a defendant is convicted of both a kidnapping and an associated felony when the victim's confinement was "essentially incidental" to the associated felony. Anthony, 817 S.W.2d at 306. Facts independent and separate of those necessary to convict the defendant of the associated felony must be shown to sustain a kidnapping conviction. Id. at 301. The supreme court refined the test for whether due process bars a separate conviction for kidnapping in State v. Dixon, 957 S.W.2d 532 (Tenn. 1997). The supreme court stated that although it adheres to the due process principles articulated in Anthony, the two-part test announced in Dixon replaced Anthony's "essentially incidental" analysis. State v. Richardson, 251 S.W.3d 438, 442-43 & 443 n.5 (Tenn. 2008). "The Dixon test 'provides the structure necessary for applying the principles announced in Anthony.'" Id. at 443 (quoting Fuller, 172 S.W.3d at 537). The Dixon test first requires a court to inquire "whether the movement or confinement was beyond that necessary to consummate the act . . . ." Id. at 535 (citing Anthony, 817 S.W.2d at 306). In Fuller, the supreme court clarified that Dixon's first prong is a threshold determination. Fuller, 172 S.W.3d at 537. If the first prong is satisfied, the court next must determine "whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." Dixon, 957 S.W.2d at 535.

The Anthony rule was designed to prevent a defendant from being convicted of kidnapping when the confinement was only that necessary to complete a rape or robbery. Id. at 534-35. Tennessee's broad statutory definition of kidnapping "'could literally overrun' crimes such as robbery and rape because detention and confinement against the will of the victim necessarily accompany these crimes." Richardson, 251 S.W.3d at 442) (citing Anthony, 817 S.W.2d at 303; and quoting People v. Levy, 204 N.E.2d 842, 844 (N.Y. 1965)); see Tenn. Code Ann. §§ 39-13-301 to -305. During the commission of a rape or robbery, a victim may often be held "'briefly at gunpoint,' 'bound and detained,' or 'moved into and left in another room or place.'" Richardson, 251 S.W.3d at 442-43 (quoting Levy, 204 N.E.2d at 844). In this regard, the purpose of the confinement or removal is at issue, not the distance or duration. Dixon, 957 S.W.2d at 535. However, when this brief confinement or

removal goes beyond what is necessary to accomplish the associated rape or robbery, a separate conviction for kidnapping does not violate principles of due process. Anthony, 817 S.W.2d at 306.

Our supreme court has declined to extend the Anthony rule to separate convictions for automobile burglary and theft. State v. Ralph, 6 S.W.3d 251, 254-55 (Tenn.1999). This Court has likewise declined to extend the Anthony rule to separate convictions for attempted first degree murder, aggravated burglary, and especially aggravated robbery. State v. Cowan, 46 S.W.3d 227, 234 (Tenn. Crim. App. 2000); see State v. Landy M. Clemmons, No. E2008-01326-CCA-R3-CD, 2009 WL 3255242, at *7-8 (Tenn. Crim. App., Knoxville, Oct. 12, 2009). While every robbery or rape involves some detention of the victim, not every burglary involves kidnapping. See Cowan, 46 S.W.3d att 235. Unlike the offense of kidnapping, the offense of aggravated burglary is narrowly defined by statute and its elements are clearly defined. Id. at 234; see Tenn. Code Ann. §§ 39-14-401 to -404; see also Ralph, 6 S.W.3d at 255. Aggravated burglary is a property offense, and the crime is complete upon entry into the habitation. Cowan, 46 S.W.3d at 234 (citing Tenn. Code Ann. §§ 39-14-402(a)(1), -403(a)). The Defendant in this case completed the offense of aggravated burglary the moment he entered the victim's home with the intent to commit a theft therein. See Clemmons, 2009 WL 3255242, at *8.

We conclude that the victim's subsequent confinement in her bedroom was a separate offense and that the evidence supports the Defendant's conviction for especially aggravated kidnapping. With a box knife in hand, the Defendant jumped on top of the victim, who had been sleeping, and placed an ether-soaked rag over her mouth. The victim fought with the Defendant for around ten minutes, during which time she received cuts to her thumb and chin. The statutory elements of especially aggravated kidnapping do not require a finding that Defendant moved the victim any specific distance or restrained her for any particular length of time in order for the Defendant's actions to substantially interfere with her liberty. See State v. Turner, 41 S.W.3d 663, 670 (Tenn. 2000); see also Dixon, 957 S.W.2d at 535). The facts are sufficient to show beyond a reasonable doubt that the Defendant knowingly confined the victim by use of a deadly weapon.

**Conclusion**

We conclude that the Defendant's convictions for aggravated burglary and especially aggravated kidnapping do not violate principles of due process under Anthony and that the evidence is sufficient to support the kidnapping offense. In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
DAVID H. WELLES, JUDGE