# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 18, 2012

## STATE OF TENNESSEE v. BOBBY A. RAYMER

### Appeal from the Criminal Court for Sumner County
### No. 2009-CR-869    Dee David Gay, Judge

---

### No. M2011-00995-CCA-R3-CD - Filed October 10, 2012

---

A Sumner County grand jury indicted appellant, Bobby A. Raymer, for one count of especially aggravated kidnapping and one count of aggravated robbery, and a jury found him guilty of both counts. The trial court imposed an effective sentence of thirty years to be served at 100% release eligibility. On appeal, appellant raises the following issues: (1) whether the evidence was sufficient to sustain his convictions; (2) whether the trial court should have merged the two convictions; (3) whether the trial court erred in granting the State's motion in limine to exclude evidence of the victim's prior convictions; and (4) whether the trial court erred in denying appellant's motion to use a demonstrative exhibit. Upon review of the record and the applicable case law, we conclude that the conviction for especially aggravated kidnapping must be reversed and remanded for a new trial. The conviction for aggravated robbery is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part, Reversed in Part; Remanded**

ROGER A. PAGE, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Heather Haufler, Hendersonville, Tennessee (on appeal); and Randy P. Lucas, Gallatin, Tennessee (at trial), for the appellant, Bobby A. Raymer.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Lawrence Ray Whitley, District Attorney General; and Lytle Anthony James, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Procedural History

Appellant was indicted for his involvement in the especially aggravated kidnapping and aggravated robbery of the victim, Tony Singleton, at the victim's home on March 21, 2008. The trial began on November 9, 2010, and the jury returned verdicts of guilty of both counts on November 10, 2010. On December 16, 2010, the trial court entered the judgments ordering appellant to serve concurrent sentences of twenty years for aggravated robbery to be served at 35% release eligibility and thirty years for especially aggravated kidnapping to be served at 100% release eligibility. Appellant filed a timely motion for new trial in which he raised all of the issues presented in this appeal with the exception of the merger issue. Although appellant did not include the merger issue in his written motion, the trial court allowed liberal oral amendment of the motion and heard the issue at the motion for a new trial. However, appellant failed to reduce the amendment to writing. The trial court denied appellant's motion for a new trial on April 4, 2011, and this appeal follows.

## II. Facts

The State called David Anthony Owens, Jr., appellant's co-defendant, as its first witness. Owens testified that on March 21, 2008, he, appellant, and a woman named Pam traveled to the victim's home in Cottontown, Tennessee, where, together with about eight to ten other people, they were "drinking, partying, smoking pot, [and] hanging out" until late evening. Before leaving, Owens gave appellant money to purchase marijuana from the victim. Owens testified that later that night, appellant contacted him and requested that Owens accompany appellant back to the victim's house to purchase "another sack of grass." On the way to the victim's house, they snorted cocaine and drank a few beers.

After arriving at the victim's residence, appellant and the victim began arguing, and Owens left the room. When he returned to the room, he saw that appellant and the victim were involved in a physical altercation wherein appellant used a pistol to strike the victim several times. The victim was attempting to fight back. Owens tried to convince the victim not to fight back because he feared that appellant would shoot the victim. The victim continued to try to fight back, causing appellant to strike him "a couple of more times" with the pistol. Appellant told Owens to "grab [appellant's] weed." Ultimately, appellant ordered Owens to tie up the victim with a wire or a phone charger. With the victim restrained on the floor, they left with the marijuana to go back to Springfield, Tennessee.

On cross-examination, Owens testified to "drinking and smoking pot and doing cocaine" on March 21, 2008, and could not remember if he had been up all night or for two

or three nights without sleep. He remembered leaving the victim's home and returning later that night, possibly around 9:00 or 10:00 p.m., to purchase more "grass." Owens testified that upon entering the victim's home, he knew the victim had been drinking excessively because of his slurred speech and stated that "he was drunker [sic] than we were." As appellant and the victim were "doing the dope deal," Owens went to the bathroom. At that point, he had not seen a weapon. Owens testified that when he returned to the room, the altercation between the victim and appellant was in progress, and appellant was holding a gun. Owens testified he stepped between the two men before appellant told him to get the "weed," and the victim was still trying to reach appellant. Owens testified that after he and appellant restrained the victim, they left with only the pistol and a "sack of grass." He stated that he knew the pistol was loaded because appellant "[s]hot it out of the car" on the way back to Springfield.

The victim testified that on March 21, 2008, he entertained a party of eight people in his "block" room, which was attached to his mobile home. They were drinking beer, smoking marijuana, and playing darts. When the party ended around midnight, he fell asleep on his couch. He was awakened later by someone entering his trailer through the "block" room, brandishing a pistol, and asking, "Where's it at?" The victim testified he did not know what the person was talking about, but he knew the person to be appellant, who was accompanied by David Owens. The victim further testified that appellant pushed his way into the house and again asked, "Where's it at?" He stated that he tried to knock the gun away from his face, and appellant then struck him in the head with it. The fight continued with the victim being struck in the head several more times until he threw up his hands and told appellant, "I give up." The victim testified he was then "hog-tied" on the kitchen floor and robbed of his gold necklace, $700 cash, cellular telephone, cigarettes, Zippo Lighter, pocket knife collection, pizza from the refrigerator, and his marijuana. When appellant and Owens left his home, the victim freed himself and walked next door to Tiffany and James Rogers's house. He discussed the incident with the Rogers, and after about thirty minutes, he decided to call the police.

On cross-examination, the victim acknowledged that on March 21, 2008, he had been drinking heavily since noon and smoking marijuana. He recalled having half an ounce of marijuana but denied selling the appellant any marijuana. He testified that the party ended around 10:00 p.m. The victim admitted that he had a pistol in his home but stated that a friend had previously brought the gun to him and it was not the one in appellant's hand. He further admitted that he was not supposed to own or possess a pistol. The victim testified that he was hit on the head several times with the pistol, was "covered in blood," and left "hog-tied" on the kitchen floor.

-3-

The victim's neighbor James Rogers testified that on March 21, 2008, he and his wife, Tiffany, attended a party at the victim's house along with appellant, appellant's girlfriend, and appellant's friend. Rogers related that he and his wife left the party to go home around 10:00 p.m. They were later awakened by someone beating on the door. Tiffany Rogers answered the door and returned to the bedroom "hollering and screaming" that "Tony's bloody; he needs help." When James Rogers got to the door, the victim was standing there covered in blood and "just hollering, they robbed me; they robbed me and said they're going to kill me." He testified that he and his wife accompanied the victim back to the victim's house and found the victim's house to be "a wreck." He further related that the victim then sat down in the "block" room "holding a rag on his head catching the blood." Rogers telephoned the police, and his wife picked up the couch cushions and straightened the furniture in the living room.

James Rogers also testified that there was "always a group of people" at the victim's house "everyday," as well as guns on the premises. He testified about the photograph taken by his wife two or three days after the victim was robbed. The photograph showed the victim holding a pistol and two friends holding shotguns. Rogers noted the victim still had a bandage on his forehead in the photograph.

Tiffany Rogers testified that in March 2008 she attended a party with her husband, James Rogers, at the victim's house, which was next door to their home. She related that her cousin, Pamela Raymer, arrived at the party with appellant and Owens. Mrs. Rogers stated that "[they] was [sic] just drinking, playing darts, and everything, hanging out, probably a good five or six hours." She further recalled that after leaving the party, there was a knock on her door around midnight. When she opened the door, the victim stumbled in, bleeding from a gash on his forehead, and said that "he had just been robbed by these two guys that had come down with my cousin earlier." She and her husband walked with the victim to his trailer and observed "everything was just turned over and stuff." She began helping him straighten his furniture and belongings. Mrs. Rogers testified there were little blood spots on the floor that she cleaned up. She related that she stayed there until the police arrived, and they told her to go home.

Upon cross-examination, Mrs. Rogers testified she cleaned up blood spots on the floor around the victim's coffee table in the living room only. She stated she did not clean up anything in the kitchen. She further testified that the victim furnished all the marijuana and beer for the party and stated, "I don't know of Tony to sell. I know him to smoke."

Sumner County Sheriff's Deputy Shaun Lester testified from his report that he responded to the scene at 1:21 a.m. He first made contact with a neighbor, James Rogers,

in the victim's front yard. His report noted that the victim had a small laceration over the left side of his head, and there appeared to have been a struggle inside the living room.

Detective Tim Bailey of the Sumner County Sheriff's Department testified that he arrived on the scene after the deputies and started interviewing the victim. He recalled that the victim knew the perpetrators, so it was "a proper identification and apprehension situation in my eyes." He testified that he put together a photographic lineup and interviewed witnesses and relatives of witnesses in an attempt to locate the suspects. Detective Bailey noted that Owens was apprehended within a week, but it was more than a year before appellant surrendered himself to the Robertson County Sheriff's Office.

On cross-examination, Detective Bailey testified that he knew someone had cleaned up a portion of the crime scene, and he found very little blood present. On redirect, Detective Bailey confirmed that pictures were taken of the victim's injuries about five days after the incident and showed latter stages of bruising and some contusions centered around the left portion of the victim's orbital and temple area near his ear.

David Anthony Owens, recalled by defense counsel, testified he left the victim tied up on the floor of the living room, not the kitchen. However, he acknowledged that "it's just one big room," but he would concede it was the living room.

### III. Analysis

#### A. Whether the convictions for especially aggravated kidnapping and aggravated robbery should be merged?

As noted above, appellant filed a timely motion for new trial but did not include the merger issue in his original motion. The trial court allowed an oral amendment of the motion on the day of the hearing and allowed appellant to present the issue. However, appellant failed to reduce the amendment to writing. This court has repeatedly held that a defendant's failure to reduce an oral amendment to a motion for new trial to writing within thirty days of the entry of the sentencing order results in waiver of the issue. *State v. Ronald Lee Stewart*, No. M2008-00337-CCA-R3-CD, 2010 WL 2025407, at *4 (Tenn. Crim. App. May 21, 2010); *see State v. Mark C. Noles*, No. M2006-01534-CCA-R3-CD, 2007 WL 3274422, at *11 (Tenn. Crim. App. Nov. 6, 2007), *perm. app. denied* (Tenn. Apr. 7, 2008); *State v. Ronnie Watson*, No. W2001-03084-CCA-R3-CD, 2002 WL 31258011, at *1-2 (Tenn. Crim. App. Sept. 16, 2002); *State v. Christopher D. Lanier*, No. W2001-00379-CCA-R3-CD, 2002 WL 1482712, at *4 (Tenn. Crim. App. Feb. 1, 2002). This court could certainly conclude that appellant's issue of whether the convictions for especially aggravated kidnapping and

aggravated robbery should be merged is waived. *See* Tenn. R. App. P. 3(e); Tenn. R. Crim. P. 33(b).

> Waiver notwithstanding,
>
> [w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal.

Tenn. R. App. P. 36(b). This discretionary consideration of waived issues is often referred to as "plain error" review. *See Grindstaff v. State*, 297 S.W.3d 208, 219 n.12 (Tenn. 2009). Our supreme court formally adopted this court's *Adkisson* test for reviewing claims of plain error:

> The Court of Criminal Appeals has developed five factors to consider when deciding whether an error constitutes "plain error" . . . : "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The "'plain error' must [have been] of such a great magnitude that it probably changed the outcome of the trial." *Smith*, 24 S.W.3d at 282 (quoting *Adkisson*, 899 S.W.2d at 642) (alteration in original). All five factors must be established by the record before a court will find plain error. *Id.* at 282. Complete consideration of all the factors is not necessary when clearly at least one of the factors cannot be established by the record. *Id.* Appellant bears the burden of demonstrating to this court that plain error renders the convictions infirm. *State v. Gomez*, 163 S.W.3d 632, 646 (Tenn. 2005). In this case, we conclude that "[i]n light of the lengthy sentence [appellant] received as a result of being convicted of both [especially] aggravated kidnapping and [aggravated robbery], . . . review of the issue is 'necessary to do substantial justice.'" *State v. Iroko Phillips*, No. W2010-01605-CCA-R3-CD, 2011 WL 2714105, at *7 (Tenn. Crim. App. July 13, 2011); *see* Tenn. R. App. P. 36(b). Accordingly, we elect to determine whether plain error is present.

Having concluded that the merger issue is subject to a plain error analysis on appeal, we now address whether the trial court should have merged the convictions for especially

aggravated kidnapping and aggravated robbery. Tennessee Code Annotated defines especially aggravated kidnapping, as charged in this case, as the following:

> (a) Especially aggravated kidnapping is false imprisonment, as defined in § 39-13-302:
>
> > (1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon.

Tenn. Code Ann. § 39-13-305(a)(1) (2006). Further, false imprisonment is defined as the following: "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." *Id.* § 39-13-302(a) (2006). Appellant argues that the only restraint that he used was that necessary to complete the offense of aggravated robbery. Relying on *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991), and its line of cases, appellant likewise argues that there is no proof of additional confinement of the victim beyond that necessary to accomplish the robbery. The State responds that the movement and confinement of the victim was beyond that necessary to commit the robbery.

Our supreme court, in *State v. Anthony*, examined "the propriety of a kidnapping conviction where detention of the victim is merely incidental to the commission of another felony, such as robbery or rape." *Id.* at 300. The *Anthony* court held that the proper test to decide whether the detention was incidental was "whether the confinement, movement, or detention is essentially incidental to the accompanying felony . . . or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction." *Id.* at 306.

Later, in *State v. Dixon*, the court replaced the "essentially incidental" analysis with a new two-part test:

> We must now decide whether the movement or confinement was beyond that necessary to consummate the act of [the other offense]. If so, the next inquiry is whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm.

*State v. Dixon*, 957 S.W.2d 532, 535 (Tenn. 1997) (internal citation omitted). An affirmative response to the second part of the test means that "[a] separate conviction for kidnapping

does not violate due process." *State v. Richardson*, 251 S.W.3d 438, 443 (Tenn. 2008) (citing *Dixon*, 957 S.W.2d at 535).

In *State v. Richardson*, the Tennessee Supreme Court clarified the status of the law on this issue:

> The *Dixon* two-part test fully replaces the *Anthony* "essentially incidental" analysis. As we previously have observed, the *Dixon* test "provides the structure necessary for applying the principles announced in *Anthony*." *State v. Fuller*, 172 S.W.3d 533, 537 (Tenn. 2005). Although we adhere to the due process principles adopted in *Anthony*, we now make clear that the *Anthony* analysis should not be used in conjunction with the *Dixon* two-part test. The *Dixon* test should be used exclusively in all future inquiries.

*Richardson*, 251 S.W.3d at 443 (internal footnotes omitted).

The Tennessee Supreme Court recently overruled *Anthony*, *Dixon*, "and the entire line of cases including a separate due process analysis in appellate review." *State v. White*, 362 S.W.3d 559, 578 (Tenn. 2012). The court held that

> the legislature did not intend for the kidnapping statutes to apply to the removal or confinement of a victim that is essentially incidental to an accompanying felony, such as rape or robbery. This inquiry, however, is a question for the jury after appropriate instructions, which appellate courts review under the sufficiency of the evidence standard as the due process safeguard.

*Id.* at 562. The court concluded that our kidnapping offenses "evince a legislative intent to punish as kidnapping only those instances in which the removal or confinement has criminal significance above and beyond that necessary to consummate some underlying offense, such as robbery or rape." *Id.* at 577. Our supreme court held that "trial courts must ensure that juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony." *Id.* at 578. Our supreme court's ruling in *White* emphasized that it "does not articulate a new rule of constitutional law or retroactive application." *Id.* However, based on the facts of that case, the supreme court held that the "proof could be interpreted in different ways and, therefore, the determination of whether the removal or confinement of [the victim] constituted a substantial interference with her liberty was a question of fact for the jury." *Id.* at 579. According to the supreme court, an instruction requiring a "determination of whether the removal or confinement is, in essence, incidental to the accompanying felony or, in the

-8-

alternative, is significant enough, standing alone, to support a conviction" is needed to ensure constitutional due process is given to defendants charged with kidnapping and an accompanying felony. *Id.* at 578.

The supreme court reviewed the jury charge from the trial and stated that while the instructions tracked statutory language, "they did not define the key element - the substantial interference with the victim's liberty - as requiring a finding by the jury that the victim's removal or confinement was not essentially incidental to the accompanying felony offense." *Id.* at 580. The court held that "[b]ecause the jury was not properly instructed on the question of whether the victim's removal or confinement was essentially incidental to an accompanying felony, the Defendant is entitled to a new trial on the especially aggravated kidnapping charge." *Id.*

The proof at trial in appellant's case in support of the especially aggravated kidnapping conviction showed that appellant and his co-defendant unlawfully entered the victim's home; appellant struck him multiple times with a pistol; the victim fought back; the co-defendant "hog-tied" the victim at appellant's behest; and the men robbed the victim. This proof is inclined to at least two interpretations: (1) that appellant restrained the victim to prevent him from further fighting back, therefore the restraint was incidental to the aggravated robbery, or (2) that appellant or his co-defendant restrained the victim to prevent detection, to enable their escape, to prevent the victim from summoning help, or for some other reason not incidental to the aggravated robbery. Therefore, whether the confinement of the victim constituted a substantial interference of the victim's liberty that was to a greater degree than necessary to commit aggravated robbery was a question of fact for the jury to resolve. *See id.* at 578; *State v. Michael L. Powell*, No. E2011-00155-CCA-R3-CD, 2012 WL 1655279, at *9 (Tenn. Crim. App. May 10, 2012).

As noted above, the trial court's instructions to the jury on especially aggravated kidnapping tracked the statutory language. However, they did not require a finding by the jury that the victim's confinement constituted a substantial interference with the victim's liberty that was not essentially incidental to the accompanying felony offense of aggravated robbery. We conclude that the jury was improperly instructed because it was not instructed to determine whether the victim's confinement was essentially incidental to the accompanying felony.[1]

We must now consider whether the erroneous jury instruction rises to the level of plain error that requires relief. The record clearly establishes what happened at trial. The

---

[1]The trial judge properly instructed the jury pursuant to the Tennessee Pattern Jury Instructions that were in effect at the time of trial.

jury returned verdicts of guilty of especially aggravated kidnapping and aggravated robbery. Appellant filed a timely motion for new trial and raised the merger issue in a subsequent oral amendment thereto. The trial court allowed the amendment, heard appellant's arguments, and ruled adversely to appellant on all issues. Although appellant raised this issue on appeal, he unsuccessfully preserved the issue for our review by failing to file the required written amendment to the motion for a new trial. A clear and unequivocal rule of law, that of due process, affected one of appellant's substantial rights. *See, e.g., White*, 362 S.W.3d at 578 (holding that to ensure constitutional due process, a jury must determine whether removal or confinement is incidental to the accompanying felony or is significant enough to support a conviction of kidnapping). Appellant did not waive review of the issue for tactical reasons; to the contrary, he attempted, albeit unsuccessfully, to preserve the issue for appellate review. Finally, the error in this case was of such magnitude that it may have changed the outcome of the trial. Appellant was sentenced to twenty years at 35% release eligibility for aggravated robbery and thirty years at 100% for especially aggravated kidnapping. Because the evidence underlying the conviction for especially aggravated kidnapping was subject to two distinct interpretations, an error in the jury instructions could have changed the outcome of the trial. We conclude that the doctrine of plain error requires us to reverse appellant's conviction for especially aggravated kidnapping and remand to the trial court for a new trial on that offense.

To provide guidance to trial courts, the supreme court in *White* set out the following instruction to be followed by the trial courts until the Committee on Criminal Pattern Jury Instructions adopts an instruction in response to the case:

> To establish whether the defendant's removal or confinement of the victim constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of this case, including, but not limited to, the following factors:
>
> - the nature and duration of the victim's removal or confinement by the defendant;
>
> - whether the removal or confinement occurred during the commission of separate offenses;
>
> - whether the interference with the victim's liberty was inherent in the nature of the separate offense;

- whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;

- whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in this objective; and

- whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

362 S.W.3d at 580-81. Therefore, on remand, the trial court should instruct the jury consistently with the *White* opinion during appellant's new trial on the especially aggravated kidnapping conviction, unless a pattern jury instruction is implemented before such time. Accordingly, we reverse appellant's conviction for especially aggravated kidnapping and remand for a new trial on that offense.

### B. Sufficiency of the Evidence for Aggravated Robbery

The standard for appellate review of a claim of insufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn.

1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729; *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Because a conviction may not be based solely upon the uncorroborated testimony of an accomplice, it is necessary to ascertain the sufficiency of the evidence in terms of whether the State presented corroboration of any accomplice's testimony. "[A] conviction may not be based solely upon the uncorroborated testimony of an accomplice to the offense." *State v. Bane*, 57 S.W.3d 411, 419 (Tenn. 2001) (citing *State v. Stout*, 46 S.W.3d 689 (Tenn. 2001)). Our supreme court has explained:

> There must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence.

*Bane*, 57 S.W.3d at 419.

This court reiterated, "An accomplice is defined as one who 'knowingly, voluntarily, and with common intent participates with the principal offender in the commission of the crime alleged in the charging instrument.'" *State v. Tyree Robinson*, No. W2008-01001-CCA-R3-CD, 2009 WL 1741401, at *7 (Tenn. Crim. App. June 16, 2009) (quoting *State v. Griffis*, 964 S.W.2d 577, 588 (Tenn. Crim. App. 1997)), *perm. app. denied* (Tenn. Nov. 23, 2009). The pivotal inquiry into whether a witness is an accomplice rests upon "whether the witness could be indicted for the same offense as the defendant." *Id.* (citing *State v. Green*,

915 S.W.2d 827, 831 (Tenn. Crim. App. 1995); *State v. Lawson*, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990)).

Appellant's co-defendant/accomplice testified at appellant's trial, implicating appellant in the aggravated robbery of the victim and both of them in the especially aggravated kidnapping of the victim. The accomplice's testimony was corroborated by the victim, and the corroboration included some facts establishing the perpetrator as appellant. Viewing the evidence in the light most favorable to the State, the jury considered evidence that appellant and Owens attended a gathering at the victim's residence earlier on the evening of the attack. Some time later, appellant asked co-defendant to drive him back to the victim's residence so that he could purchase more marijuana. Shortly after their arrival, appellant and the victim became engaged in an altercation. Two witnesses testified that appellant struck the victim multiple times with a pistol, that Owens bound the victim at appellant's urging, and that the victim remained bound when appellant and Owens left the victim's residence. The victim's next door neighbors testified about his injuries and the condition of his residence following the altercation. The victim offered testimony concerning the items that were stolen.

Appellant points this court to several inconsistencies in the testimony of witnesses at trial. However, the jury is the finder of fact in a jury trial and resolves all questions involving the credibility of witnesses, the weight and value to be given the evidence, and factual disputes raised by the evidence. *Bland*, 958 S.W.2d at 659; *Pruett*, 788 S.W.2d at 561. The jury credited the State's evidence in this case by returning a verdict of guilty on the charge of aggravated robbery. We find that the convicting evidence is sufficient to sustain the conviction. Appellant is not entitled to relief on this issue.

### C. Trial Court's Granting of State's Motion in Limine

Appellant argues that the trial court erred in granting the State's motion in limine to prohibit the defense from introducing evidence of the victim's criminal record. He asserts that the stringent requirements of Rule 609 of the Tennessee Rules of Evidence do not apply to witnesses other than the accused in a criminal prosecution. We review a trial court's ruling on the admissibility of impeachment evidence for abuse of discretion. *See State v. Baker*, 785 S.W.2d 132, 134 (Tenn. Crim. App. 1989).

The victim in this case had garnered the following criminal history:

(1)     Misdemeanor assault, 1984;

(2)     Misdemeanor resisting arrest, 1989;

(3)     Felony drug conviction, 1995;

(4)     Misdemeanor drug conviction, 2005; and

(5)     Misdemeanor drug conviction, 2010.

The record established that the victim had four misdemeanor convictions. He also had  one felony conviction that was more than ten years old.

Rule 609 of the Tennessee Rules of Evidence provides that a witness's credibility can be attacked with evidence that he or she has been convicted of a crime under certain specific conditions.  Among the conditions are that the crime must be punishable by death or more than one year in prison or must have been a crime involving dishonesty or false statement. Tenn. R. Evid. 609(a)(2).  The Advisory Commission Comment makes clear that only felony convictions or misdemeanor convictions involving dishonesty or false statement "are competent for impeachment."  Tenn. R. Evid. 609, Advisory Comm'n Cmt.  An additional criteria for admissibility is that the conviction must be less than ten years old, calculated from the date of conviction or release from confinement and commencement of the action or prosecution.[2]  Tenn. R. Evid. 609(b).  On its face, the victim's criminal record falls outside of the parameters of competent impeachment evidence established by the rules of evidence. The misdemeanor convictions for assault or drug possession do not involve dishonesty or false statement.  *See, e.g., State v. Walker*, 29 S.W.3d 885, 991 (Tenn. Crim. App. 1999) (holding that drug crimes, whether for possession or sale, do not generally fall within the category of crimes involving dishonesty or false statement as contemplated by Rule 609). The felony conviction was more than ten years old at the time of trial and did not meet any exceptions for admissibility under Rule 609(b) of the Tennessee Rules of Evidence.

Appellant advances an alternative argument that the victim's prior convictions, one stale felony and four misdemeanors that do not involve dishonesty, should have been admitted pursuant to the balancing test found in Rule 609(b) of the Tennessee Rules of Evidence.  Rule 609(b) addresses the admissibility of stale convictions, i.e., convictions more than ten years old.  Tenn. R. Evid. 609(b).  The rule permits admissibility of stale convictions if the proponent gives notice of intent to use the convictions, the adverse party has an opportunity to contest the use of the evidence, and "the court determines in the interests of justice that the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."  Tenn. R. Evid. 609(b).

---

[2]  Convictions more than ten years old may be admissible if certain conditions are met.

We first note that the issue was brought before the trial court on the State's motion in limine and was heard on the morning of the trial. Procedurally, appellant has failed to comply with the requirements of Rule 609(b) by failing to give notice of intent to use the convictions as impeachment evidence. In granting the State's motion in limine, the trial court ruled that "[d]rug use . . . is going to come out." The court recognized that the facts of the case involved buying and selling of drugs and did not prohibit introduction of that evidence. The court simply ruled that it would apply Rule 609 to the admissibility of evidence of the victim's convictions for impeachment purposes. At trial, appellant asked the victim, "Are you denying that you sold marijuana to people," and the victim testified, "No, sir." The jury had before it evidence of the victim's drug dealing. The trial court did not abuse its discretion in excluding the victim's stale conviction from evidence, and appellant is not entitled to relief on this issue.

### D. Whether the trial court erred in denying appellant's motion to use a demonstrative exhibit?

Appellant's final lamentation is that the trial court erred in denying his motion to use a demonstrative exhibit, specifically a 1860 Colt Navy .44 caliber pistol. The weapon appellant wished to use was not the weapon used in the offenses. At trial, appellant wanted the jury, some of whom he opined may not be familiar with guns, to view the weapon, hold the weapon, and ultimately conclude that being "pistol-whipped" would have resulted in more serious injuries than those depicted in the photographs of the victim.

The determination of whether evidence is admissible at trial is a matter left to the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *State v. Dellinger*, 79 S.W.3d 458, 485 (Tenn. 2002); *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. All relevant evidence is admissible unless specifically excepted by constitution, statute, rules of evidence, or rules of general application. Tenn. R. Evid. 402. One such exception sets forth that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

The weapon used in the offenses in this case was not recovered. The gun proffered as demonstrative evidence was likely, by appellant's admission, heavier in weight and longer in the barrel than the weapon used in the commission of the offenses. Appellant asked to use the weapon to demonstrate for the jury that the victim would have sustained greater injuries

than those depicted in the photographs if he were, in fact, struck with a pistol. Thus, appellant sought to impeach the victim by contradicting his testimony with the demonstrative evidence. The trial court ruled, "[T]his is going to be so prejudicial because it's heavier, it's bigger, and I don't think it's a fair proposition, and I think that this weapon should not be placed in demonstrative evidence . . . ."

The trial court properly ruled that such a comparison would be prejudicial. We agree that the probative value of the demonstrative evidence, if any, was substantially outweighed by the danger of unfair prejudice and misleading the jury. Without formally doing so, the trial court took judicial notice that weapons range in length and weight. This court takes judicial notice that weapons, including pistols, are manufactured in differing lengths and weights. *Smith v. State*, 607 S.W.2d 906, 907 (Tenn. 1980) (noting that an appellate court may take judicial notice of facts which the trial court could have noticed). Judicial notice is the process by which a court accepts facts as true without proof because knowledge of those facts is so notorious that everyone is assumed to possess it. *Id.* (citations omitted). Use of the proffered evidence for the purpose of establishing inconsistencies in the victim's recount of the events in question was not proper because of the differing sizes and weights of weapons. No evidence pertaining to the barrel length or the weight of the gun involved in the offenses was introduced. Had the trial court allowed the demonstrative evidence for comparative purposes, it would have risked misleading the jury. The trial court did not abuse its discretion, and appellant is not entitled to relief on this issue.

## CONCLUSION

We reverse and remand appellant's conviction for especially aggravated kidnapping. We affirm the remaining conviction for aggravated robbery.

_____
ROGER A. PAGE, JUDGE